**UTAH STATE ROAD COMMISSION,**
Plaintiff and Appellant,

v.

**Kiyoshi MIYA et al., Defendants and Respondents.**

No. 13504.

Supreme Court of Utah.
Sept. 11, 1974.

---

1. 90 C.J.S. Trusts § 325.

Vernon B. Romney, Atty. Gen., Donald S. Coleman, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Glen E. Fuller, Orval C. Harrison, Salt Lake City, for defendants and respondents.

CALLISTER, Chief Justice:

Plaintiff initiated this action to acquire under the power of eminent domain the fee title to .66 acre of land of defendants for highway purposes. Defendants' land is located within the city limits of Clearfield, Utah, and both parties agreed that its highest and best use was for residential purposes. Of the land taken .50 acre was subject to an easement for highway purposes; in addition a .16 acre triangular shaped piece was acquired. Upon trial before a jury, defendants were awarded $750 for the land taken and $8,000 severance damages. Plaintiff appeals and seeks to have the award of all severance damages stricken.

Defendants' parcel consisted of approximately 44 acres; the southern boundary of which abutted along an existing right-of-way known as 300 North. The utilities, such as sewer and water, were installed along the street; an expert testified that this abutting land could be sold in ½ acre tracts for residences which could utilize the existing utilities. This suggested manner of development was similar to other parcels abutting along 300 North; i. e., the

houses were constructed fronting on the street so as to utilize the existing improvements in the most inexpensive manner. Within the existing right-of-way the State constructed a viaduct which attained a maximum height of 25 feet to cross railroad tracks which were situated directly east of defendants' tract. One-way frontage roads were constructed on the same grade as the previously existing road so that all of defendants' abutting land retained access to the highway system, although a certain amount of circuity of travel was created by the improvement.

Defendants' expert witness testified that there were approximately eight building lots, abutting on the street, that were adjacent to the structure erected by plaintiff. The expert testified that these lots were more valuable than the remaining acreage because they were ready for immediate development with the existing utilities. After construction of the viaduct, the value of the lots decreased since a willing purchaser will not pay as much for a residential lot facing an overpass; the viaduct obstructs the view and interferes with one's privacy. Defendants presently farm the land, and they could have sold the frontage for building lots and retained the remainder for farming. With the construction of the viaduct the entire parcel of land would have to be developed as a subdivision with streets constructed running into the interior portion of the parcel so that residences would not face the giant concrete structure. Even if the entire parcel were developed as a whole, the lots adjacent to the overpass would have to be larger than normal to compensate for the adverse effect on the privacy and view of the owner. Based on the foregoing the jury found that $8,000 in damages had accrued to the remaining parcel of defendants' land by reason of its severance from the part taken and the construction of the improvement in the manner proposed by plaintiff, 78–34–10(2), U.C.A.1953.

On appeal, plaintiff contends that the trial court erred in allowing testimony as to severance damages resulting from the construction of the viaduct within the existing right-of-way. Plaintiff characterizes the improvement as the installation of a traffic control device under the police power and claims that the structure is analogous to a median divider placed in the center of 300 North Street. Plaintiff emphasizes that the testimony concerning the severance damages indicated that said damages resulted not from the taking of .16 acre of land but from the construction of the viaduct. Plaintiff urges that the construction of a viaduct over a railroad crossing is pursuant to the exercise of the police power to provide for the orderly flow of traffic and any damages sustained by an abutter are *damnum absque injuria*.

Plaintiff has failed to distinguish between the police power, which is used to regulate and the power of eminent domain, which is used to acquire property from private ownership. A property owner has no property right to a free and unrestricted flow of traffic past his premises, and any impairment or interference with this flow does not entitle the owner to compensation. Thus, no private property right is taken by the construction of a median divider, since the abutting owner has no property right in the free flow of traffic past his place of business. However, where a police power is exercised as an incidental result of the exercise of eminent domain, just compensation is due if the market value of the property has been diminished. The constitutional guarantee of just compensation for the taking or damaging of private property for public use is in no way affected by the fact that the expropriator is exercising the police power.[1] The rights of access, light, and air are easements appurtenant to the land of an abutting owner on a street; they constitute property rights forming part of the owner's estate. These substantial property rights, although subject to reasonable regulation, may not be taken

---

1. Constitution of Utah, Art. I, Sec. 22.

away or impaired without just compensation.[2]

■ The erection of a permanent structure within a public highway of such a character as to rank as a proper highway use, even if it diminishes the value of abutting property, is not in and of itself a damage in the constitutional sense. Unless the structure violates some right appurtenant to the abutting property or otherwise inflicts some special and peculiar injury the owner is not entitled to compensation. One of the rights appurtenant to abutting property is that of receiving light and air from the highway, and an abutting owner is entitled to compensation for infringement of his right to light and air by a structure in the highway, even if it is a proper highway use.[3]

■ An owner of land abutting on a street is also in possession of an easement of view, which constitutes a property right which may not be taken without just compensation.[4] Section 27–12–96, U.C.A. 1953, as amended 1963, authorizes the Commission to acquire any real property or interests therein for highway purposes including rights of access, air, light, and view.

. . . the loss of view occasioned by a proposed public structure to be erected, in part at least upon a parcel of property taken by condemnation from a unit of property, so far as constituting a factor to be considered in determining severance damage, is to be measured by the effect the obstruction of the view, created by the structure, has upon the market value of the residue of the unit of property . . . .[5]

Where the construction and operation of the project for which land was condemned results in interference with the privacy of abutting owners, it has been held that such loss is an element of damages which should be considered in ascertaining the compensation to which such abutting owner is entitled . . . .[6]

■ Under Section 78–34–10(2), U.C.A.1953, as amended 1963, the trial court did not err in its refusal to strike the testimony of defendants' expert witness for the reason that relevant factors of severance damage, in ascertaining the fair market value of a remaining parcel, include impairment of light and air, impairment of view, invasion of privacy, and deprivation of access.[7] The judgment of the trial court is affirmed.

HENRIOD, ELLETT, CROCKETT, and TUCKETT, JJ., concur.

2. Hampton v. State Road Commission, 21 Utah 2d 342, 445 P.2d 708 (1968); State Road Commission v. Rozzelle, 101 Utah 464, 120 P.2d 276 (1942).

3. 2A Nichols on Eminent Domain (3rd Ed.) Sec. 6.445(1) pp. 6–307 to 6–310.

4. 2 Nichols on Eminent Domain (3rd Ed.) Sec. 6.32, pp. 6–74 to 6–79.

5. Housing Authority of City of Seattle, 68 Wash.2d 485, 413 P.2d 635, 638 (1966);

also see 8.4 A.L.R.2d 348, Anno: Interference with view as matter for consideration in eminent domain, Sec. 4, p. 360; State v. Allison, Okl., 372 P.2d 850 (1962); Pierpont Inn, Inc. v. State, 70 Cal.2d 282, 74 Cal.Rptr. 521, 449 P.2d 737 (1969).

6. 4A Nichols on Eminent Domain (3rd Ed.) Sec. 14.2432(1), pp. 14–197 to 14–198.

7. Pierpont Inn, Inc. v. State, note 5, supra.