**UTAH DEPARTMENT OF TRANSPOR-
TATION, Plaintiff and Respondent,**

v.

**Don E. JONES, and Arlene J. Jones,
his wife, Defendants and Appellants.**

No. 18815.

Supreme Court of Utah.

Nov. 30, 1984.

Brant H. Wall, Salt Lake City, for defendants and appellants.

David L. Wilkinson, Atty. Gen., Stephen J. Sorenson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

**HALL, Chief Justice:**

The Utah Department of Transportation (UDOT) commenced condemnation proceedings against Don E. Jones and Arlene J. Jones to acquire a portion of their land for construction of a highway project. The defendants appeal a jury verdict in that action awarding them $76,675 in compensation. We reverse.

The Joneses were the owners in fee simple of a 96.12-acre tract of land located one mile north of the city limits of Nephi, Utah, on the east side of U.S. Highway 91. The tract was rectangular in shape and had approximately 1,200 feet of unrestricted footage along the highway.

On September 18, 1979, UDOT filed an action to condemn 13.81 acres of defendants' land and to obtain easements across an additional .39-acre segment for the construction and development of Interstate Highway 15. The land condemned bisected defendants' total tract, leaving 16.84 acres on the east side of the condemned area and 65.47 acres on the west side.

The portion of the interstate constructed on the condemned segment of defendants' land did not include access facilities to defendants' remaining land. Thus, access to the 65.47-acre parcel from the east was eliminated. Access to the 16.84-acre parcel from all sides was also eliminated with the exception of access from a small, unimproved road extending along the east side of the new highway.

At the time the condemnation occurred, the subject property was zoned "agricultural."

After a trial before a jury at which disparate evidence was adduced by the parties pertaining to just compensation for the taking of defendants' property, the jury returned a verdict awarding defendants $76,675. The trial judge entered judgment on the verdict and denied defendants' motion

for a new trial and for additur. Defendants appeal, contending that there were a number of errors committed by the trial court in the admission of evidence.

Defendants first contend that the jury verdict awarding $76,675 as just compensation for taking defendants' property was not supported by the evidence.

When a jury verdict is supported by the evidence, this Court will not disturb that verdict. In eminent domain cases, absent a showing of passion and prejudice, if the award of compensation was within the estimate of value given by one of the expert witnesses, it is supported by competent evidence and will be affirmed.[1]

In this case, defendants' expert witness, John C. Brown, testified that the value of the 13.81 acres condemned in fee and the .39-acre permanent easement was $62,267. The remainder tract sustained severance damages of $78,500 for a total compensation value of $141,000.

Don E. Jones testified that the value of the 14.20 acres taken was $71,000 and that severance damages totaled $95,806. Thus, defendant testified that just compensation to him would be $166,806.

UDOT's expert witness, William R. Lang, testified that the value of the land taken was $44,275: $3,125 per acre for 13.81 acres plus $1,099.80 for the .39 acres in permanent easements. Lang also testified that the remainder tracts had suffered severance damages of $46,314. However, Lang's final estimate of just compensation totaled $44,275. While he recognized that severance damages had been sustained, he testified that those damages had been offset by the special benefits conferred on the property as a result of the highway construction.

UDOT contends that in light of Lang's testimony, the jury award of $76,675 was not less than the lowest value testified to by an expert witness and thus was supported by the evidence. We do not find this to be the case.

During Lang's testimony, UDOT attempted to adduce evidence from him on special benefits to defendants' property from the highway construction. Upon objection by defendants, the judge recessed the jury and listened to a proffer of what Lang's testimony as to special benefits would be if he were allowed to testify. Based on that proffer the trial judge sustained defendants' objection and refused to allow UDOT's evidence as to special benefits into the record.

Nevertheless, over defendants' objection and motion to strike, Lang continued to testify that the severance damages suffered by the remainder property were offset by the benefits to the property. Thus, Lang's final estimate of just compensation took into account the very evidence of benefits that the trial judge refused to be allowed to be placed into evidence.

In light of this fact, Lang's final estimate of $44,275 is not supported by the evidence. The evidence adduced through Lang's admissible testimony was that just compensation for the land taken was $44,275 and severance damages were $46,314 for a total of $90,589. Severance damages cannot be offset by benefits where there is no evidence as to benefits as provided for in U.C.A., 1953, § 78–34–10(4).

Therefore, the three estimates of just compensation introduced into evidence at trial were $90,589 (Lang), $141,000 (Brown), and $166,806 (Jones). The jury award of $76,675 was lower than any of these figures and is thus not supported by the evidence. The verdict must, therefore, not be permitted to stand.

Defendants also raise several other points which in light of Utah R.Civ.P. 76(a) must be addressed here. The first of these contentions is that the trial court erred in refusing to allow testimony from John Brown, defendants' expert witness, concerning the effect the design of the highway and culvert system would have on the

1. *Weber Basin Water Conservancy Dist. v. Skeen*, 8 Utah 2d 79, 81, 328 P.2d 730, 731 (1958); *see* *also People v. Hayward Bldg. Materials Co.*, 213 Cal.App.2d 457, 28 Cal.Rptr. 782 (1963).

drainage pattern onto defendants' remaining land.

Defendants attempted to adduce testimony from Brown concerning drainage problems resulting from the design and construction of the interstate as a factor in determining the amount of severance damages. Upon objection by UDOT that evidence concerning drainage damages did not relate to the fair market value on the date of taking and that Brown was not qualified as an expert to testify as to drainage difficulties, the trial judge ruled the evidence inadmissible.

U.C.A., 1953, § 78–34–10(2) states:

If the property sought to be condemned constitutes only a part of a larger parcel, [the jury must ascertain and assess] the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and *the construction of the improvement in the manner proposed by the plaintiff.* [Emphasis added.]

■ Evidence as to drainage damages which would be caused by the construction of the highway and culvert system as designed by UDOT certainly falls within this section. To suggest that any entity granted the right of eminent domain could design its project without regard to the effect that project would have on adjacent land is to deny the very purpose of the compensation statutes.

UDOT cites *Redevelopment Agency of Salt Lake City v. Mitsui Investment, Inc.,*[2] to support its contention that any damages caused by drainage resulting from the design and construction of the highway system by UDOT is a subsequent occurrence and not admissible as bearing on severance damages. *Mitsui* is inapposite. In *Mitsui,* the trial court excluded evidence that, after the date of taking,

buildings on the subject property were razed and a parking lot built which resulted in higher income than the buildings had produced. The Court affirmed citing the general rule: "[T]he value of condemned property is to be determined as of the date and under the circumstances existing at the time of the taking; and ... ordinarily evidence of subsequent occurrences is not admissible as bearing thereon."[3]

No attempt was being made in *Mitsui* to determine the severance damages to the remainder of the larger parcel from the project as designed by the redevelopment agency. The question there was only whether it was permissible to increase the value of the subject property by improving that property after the date of taking by the redevelopment agency but before damages were assessed.

The trial judge also refused to admit Brown's evidence on drainage damages ruling that Brown was not qualified as an expert to testify as to drainage difficulties.

■ Rule 56(2)(b) of the Utah Rules of Evidence[4] provides that if the witness is an expert, the testimony is limited to "such opinions as the judge finds are ... within the scope of the special knowledge, skill, experience or training possessed by the witness." This allows considerable discretion in the trial judge, and his rulings as to admission of evidence will not be overturned absent an abuse of that discretion.[5]

■ In this case, there appears to have been an abuse of discretion in refusing to allow the testimony of an expert real estate appraiser concerning the severance damages that would result from alteration of drainage patterns by the highway construction.

Brown had been qualified as an expert appraiser by the court. He had been a real

---

**2.** Utah, 522 P.2d 1370 (1974).

**3.** *Id.* at 1372 (footnotes omitted).

**4.** In effect at the time of the trial, but since superceded by Utah Rules of Evidence adopted effective September 1, 1983.

**5.** *See, e.g., Barson v. E.R. Squibb & Sons, Inc.,* Utah, 682 P.2d 832 (1984).

estate appraiser since 1965, working in various appraiser positions with UDOT until 1978, when he resigned to become a full-time, independent fee real estate review appraiser. As an independent appraiser, Brown continued to do highway condemnation appraisals on contract with UDOT, including a number in the Nephi area. Brown thus clearly had extensive experience in the area of appraisals of property for highway condemnation proceedings.

Brown was not attempting to testify as an engineer critiquing the highway design. He was attempting to use his extensive expertise in highway condemnation real estate appraisals to estimate how the highway project as placed and designed would affect the remainder parcels. This was well within his expertise. A real estate appraiser with extensive experience in highway condemnation proceedings does not need an engineering degree to estimate damages from highway construction any more than he needs a degree in agriculture to estimate value of cultivated farm lands or an architectural or engineering degree to estimate value of buildings.

As the Court said in *Mitsui*:

It is true that the appraiser should take into account all facts and circumstances relating to the property which he thinks has a bearing on value.... But the work of an appraiser, though it can be in a sense factual and scientific in some of its aspects, is also an art, in that it reflects the creative talents, the experience, the integrity, and in sum, the personalized judgment of the individual appraiser. It is his prerogative to select and analyze the various factors which seem important to him in arriving at his estimate as to value. Therefore no one should be able to put him in a straight-jacket as to his method....[6]

Defendants' next point on appeal is that the trial court erred in refusing to give defendants' requested instruction which provided a verdict form. The requested instruction reads as follows:

WE, the jurors, duly impanelled in the above entitled case, find the issues in favor of the landowners and against the Plaintiff, and assess damages as follows:

Fair Market value of _____ acres taken by Utah Department of Transportation ........................$_____

Severance damages, if any, to Defendants' remaining property by reason of severance of original tract ....$_____

TOTAL JUDGMENT .............$_____

The trial judge gave the following instruction (No. 12):

In arriving at your verdict you shall fix the just compensation to be paid the defendant landowners in the following manner:

FIRST: You will ascertain the value of the property which the Department of Transportation has acquired in this case by determining the fair market value as of September 18, 1979.

SECOND: You will ascertain the damages, if any, to the remaining property of the defendant landowners which accrue by reason of its severance from the portion acquired by the Department of Transportation.

THIRD: The amounts thus determined, when added together, will equal just compensation as defined in these instructions.

An hour after the jury retired for deliberation, its members sent out this question: "On the final sheet should be [sic] put the total price of take plus damage or should these be listed separately?"

The judge instructed the jury to "Re-read Instruction No. 12" over the objection of defendants' counsel. The jury returned a lump-sum verdict.

Defendants contend that U.C.A., 1953, § 78–34–10(5) mandates their requested instruction or one similar to it. Section 78–34–10(5) states: "As far as practicable compensation must be assessed for each source of damages separately."

There is no question that "[s]ubdivision (5) requires each source of damages be

---

6. *Supra* n. 2, at 1373 (footnote omitted).

separately assessed." [7] To further this legislative directive, a verdict form requiring the jury to separately list compensation for fair market value and severance damages would be appropriate.

■ It may be true that there are circumstances where it is difficult or impossible to separately determine compensation for fair market value and severance damages. However, in cases such as this one where there is clear testimony concerning both fair market value and severance damages, section 78–34–10(5) requires that the jury verdict set forth both values.

Defendants next argue that the trial court erred in excluding evidence offered by Jones relative to the fair market value of the property.

It has long been held by this Court that an owner of real property who is familiar with his property is competent to give evidence on the market value of that property.[8]

Jones was allowed to give his opinion of the value of his property based on its use at the time of taking, the improvements on the property and the access to the property. He further was allowed to give his opinion concerning the diminution of value caused by severance of the condemned land from the entire tract. Defendants, however, contend that the trial court erred in refusing to admit Jones' opinion as to what the "highest and best use" of his property was and testimony as to whether he had entertained offers for sale of his property.

■ Admission of any type of testimony requires the laying of proper foundation to qualify the witness to give the particular testimony sought to be elicited. No foundation was laid or sought to be laid regarding Jones' qualifications to testify regarding "the highest and best use" of

the subject property. "Highest and best use" is a term of art in eminent domain proceedings. Testimony regarding it must come from properly qualified experts. Jones' ownership of the land alone would not qualify him to give such an opinion.

■ Jones also argues that the trial court erred in refusing to allow his testimony regarding offers made to him to buy the subject property. The court ruled that such evidence constituted hearsay. We agree.

Evidence of an offer to purchase by a third party and the amount of that offer is clearly hearsay as defined by Utah R.Evid. 63:[9] "Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible...."

Defendants here have attempted to get before the jury declarations of third parties as to value not supported by oath and not subject to cross-examination.[10] As hearsay, this is clearly inadmissible.

Defendants next contend that the trial court erred in excluding John Brown's testimony concerning real property sales that had taken place within the Nephi city limits as evidence of the comparable worth of defendants' property.

■ The determination of whether proffered comparable sales meet the test of reasonable comparability, so as to be admissible as having a bearing on the market value of the condemned property, is generally left to the sound discretion of the trial court. As this Court said in *Mitsui:*

> Real estate has always been regarded as unique because no two parcels can be exactly alike. It is certainly not to be supposed that there will be found sales which are identical as to time, location,

---

7. *Utah Dep't of Transp. v. Rayco Corp.*, Utah, 599 P.2d 481, 486 (1979).

8. *Terry v. Panek*, Utah, 631 P.2d 896, 898 (1981); *Williams v. Oldroyd*, Utah, 581 P.2d 561, 563 (1978); *Provo River Water Users' Ass'n v. Carlson*, 103 Utah 93, 104, 133 P.2d 777, 781–82 (1943).

9. *See supra* n. 4.

10. *See Yellowstone Park R.R. v. Bridger Coal Co.*, 34 Mont. 545, 557–58, 87 P. 963, 966 (1906).

quantity and various characteristics of the property. The requirement is that it meet the test of "reasonable comparability." That is, that these factors exist in sufficient similarity that the sale can fairly be regarded as having some probative value in arriving at a proper appraisal of the property. Whether the other sale meets that test is for the trial court to determine; and he is allowed considerable latitude of discretion; and his ruling will not be disturbed on appeal unless it appears clearly that he was in error.[11]

█ While the argument could reasonably be made for admissibility of the evidence on the value of city property it does not appear that the trial court's ruling was clearly in error. There were substantive differences in the two classes of property. For example, the city property was zoned commercial while the condemned property was zoned agricultural. No evidence was admitted that a zoning change was contemplated for the subject property or that a variance had been or would be considered. Further, the city property had sewer and water lines while the condemned property did not. Thus, the trial judge did have a reasonable basis for excluding the proffered evidence.

Defendants also assign as error the trial court's failure to give certain requested jury instructions including instructions on special benefits and fair market value. In light of our resolution of the above related issues, we need not address those contentions.

Defendants have raised several lesser points on appeal which have varying degrees of substance, but in all likelihood will not be pertinent to the retrial of this matter. Consequently, we do not address the remaining issues.

Reversed and remanded for a new trial. Costs to defendants.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

11. *Supra* n. 2, at 1373 (footnote omitted).