**THREE D CORPORATION, a Utah corporation, Distributors Inc. Utah, a Utah corporation, Lorin S. Miller, d/b/a Western Battery Manufacturing, Plaintiffs and Appellants,**

v.

**SALT LAKE CITY, a municipal corporation, Defendant and Respondent.**

No. 870127–CA.

Court of Appeals of Utah.

April 15, 1988.

Richard L. Bird, Jr. (argued), David J. Bird, Richards, Bird & Kump, Salt Lake City, for plaintiffs and appellants.

Roger F. Cutler, Salt Lake City Atty., Bruce R. Baird, Asst. City Atty. (argued), Salt Lake City, for defendant and respondent.

Before GREENWOOD, ORME and BILLINGS, JJ.

## OPINION

ORME, Judge:

Appellants Three–D Corporation and Distributors Inc. Utah appeal from a final judgment in favor of Salt Lake City and from denial of their motion for new trial. We reverse and remand.

### Factual Background

Three–D Corporation and Distributors Inc. Utah are or were the owners of commercial property located at 238 West 1300 South, and 234 West 1300 South, in Salt Lake City. (Plaintiff Lorin S. Miller is or was the lessee of part of the property but has not joined in this appeal.) The property consists of two buildings with offices and areas for serving drop-in customers.

As we understand it—and our task has been compounded by the lack of "before and after" schematic drawings—1300 South was a comparatively broad two lane street. The street was not curbed where it abutted appellants' property, allowing customers to pull off 1300 South and park head-in directly in front of the two commer-

cial facilities on property owned by appellants and lying between the street and appellants' buildings. Such parking had continued in this fashion for more than 30 years. Such parking was apparently even contemplated when the City permitted Three–D and Distributors to build their facilities, although proof of this point is difficult since the building permit and related plans cannot be located.

In 1983, the City formed a special improvement district for the installation of curbs and gutters and the widening of 1300 South. The City also planned to construct a sidewalk as part of the project and attempted to purchase a portion of appellants' property which fronted 1300 South for this purpose. Appellants refused to sell any portion of their frontage property for the sidewalk unless they were also compensated for any resulting loss of parking spaces. This condition was not acceptable to the City. As a result, the City extended the street surface only to the existing legal boundary of 1300 South and no portion of the roadway, curb, or sidewalk was constructed upon property owned by appellants.[1] However, solid curbs were constructed along nearly the entire length of appellants' property where before there was continuous and accessible frontage along the street. A curb cut, leaving a

driveway, was made just east of Three D's building. That driveway accesses a narrow alley running between Three–D's building and Distributors' commercial facility located immediately to the east. Head-in parking in front of Three D's property is no longer possible because of the curb. A sharp left turn immediately upon entering the driveway will bring a vehicle in front of Three D's building where head-in parking formerly was possible. However, such a vehicle will be parallel to the street. In order to exit this revamped parking area, one must back into the alley and onto the street. As a practical matter, there is now only room for two vehicles—side by side and parallel to the street—to park in front of Three D's business. A second curb cut was made near Distributors' building. Distributors claims that its patrons must now parallel park in front of its building and that upon exiting the property, patrons must back out onto neighboring property.[2]

In summary, as a direct result of the City's redesign of its street, appellants' property has been involuntarily reconfigured. Three–D now has off-street, storefront parking for two customers where before it had such parking for six. Distributors is also limited to fewer than the seven storefront parking spaces it had before.

Appellants claim that although there was no physical taking of their property, they

---

1. As a result, the sidewalk running along the north side of 1300 South in this block, on property purchased from appellants' neighbors, stops abruptly at the eastern edge of Distributors' property and picks up again at the western edge of Three D's property.

The appearance of this aspect of the project is apparently one of unfinished work. The City also acknowledges that if it had condemned property from appellants for the sidewalk, thereby effecting a *physical* taking, it would have been required to pay not just for the value of the strip of land taken but also for the decreased value attributable to the lost parking spaces. These two factors prompt appellants to suggest that the City is embarked upon a scheme to do in two steps what it could not do in one. Their concern is that the City will eventually condemn a strip from appellants to complete the sidewalk, but then claim it owes only for the value of the strip since the loss of parking occurred long ago and not as a result of the condemnation. The City correctly observes

that such a concern is entirely speculative, but also suggests it is mindful of the lack of warmth with which such a scheme would likely be received judicially. "As Justice Holmes aptly noted more than 50 years ago, 'a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.'" *First English Evangelistic Lutheran Church v. Los Angeles*, —— U.S. ——, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922)).

2. We are unable to comprehend the exact nature of Distributors' claim as fully as we do that of Three D. Accordingly, our opinion focuses primarily on Three D. Of course, on remand the trial court can determine to what extent Distributors' situation is similar to that of Three D and tailor its judgment accordingly.

were nonetheless damaged when their parking spaces were "taken" by the City's action. In support of their claim for compensation, appellants rely on Article II, Section 1 of the Utah Constitution, which provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." Appellants claim that the value of the property has been decreased because of the loss of parking spaces. Furthermore, appellants claim that the nature of their businesses was adversely impacted because of the diminished parking spaces. Distributors has allegedly had to sell its property and Three D claims its retail trade was destroyed.

Obviously, if the City had condemned and physically taken appellants' parking spaces, they would be entitled to compensation. *See also* Note 1, *supra.* The issue before us is whether appellants are entitled to compensation for the loss of those parking spaces where the loss is the direct result of the City's action, but where that action does not amount to an outright physical taking. We are persuaded that Three–D is probably entitled to such compensation and that Distributors might also be. *See* Note 2, *supra.*

### Prior Cases

In wrestling with this issue, the district court studied the leading Utah cases treating the impairment of property rights caused by governmental actions. A review of the cases considered by the trial court is essential in evaluating its decision.

In *Hampton v. State Road Comm'n,* 21 Utah 2d 342, 445 P.2d 708 (1968), the Road Commission blocked portions of the property owners' driveway, thus substantially interfering with the owners' only means of ingress and egress. Although there was no taking of any real property described in the landowners' deed, the Court nevertheless found there could be a taking because of the substantial and material impairment of the landowners' right of access. 445 P.2d at 712.

The Court in *Hampton* recognized that "rights of access, light and air are ease-

ments appurtenant to the land of an abutting owner on a street, and that they are property rights forming part of the owner's estate." *Id.* at 710. With reference to the right of access, the Court stated:

> The right of access to the highway however, is in the nature of a special easement, which exists as a right of ownership of abutting land, and is a substantial property right which may not be taken away or impaired without just compensation, and is subject only to a reasonable regulation.

*Id.* (quoting *Basinger v. Standard Furniture Co.,* 118 Utah 121, 126, 220 P.2d 117, 119 (1950)). The Court further determined that maintenance of a driveway into property exists as of right. *Id.*

In *Hampton,* the Court held that "substantial and material impairment" of the plaintiffs' right of access could constitute a compensable taking. *Id.* 445 P.2d at 712. The Court stated that "a person owning or in possession of premises abutting on the public highway or street, whose right of access to the same is unreasonably or unlawfully obstructed, may recover from the person causing such obstruction damages for the private injury he sustains, where such damages are particular, direct, and substantial." *Id.* at 711 (quoting *State ex rel. State Highway Comm'n v. Meier,* 388 S.W.2d 855, 860 (Mo.1965)).

In *Utah State Road Comm'n v. Miya,* 526 P.2d 926 (Utah 1974), the Court reiterated the principle that an owner of land abutting a street is in possession of rights appurtenant to the land and that such rights include an easement for light and view. *Id.* at 928. Furthermore, the Court stated that such property rights may not be taken without just compensation. *Id.* at 828–29. In *Miya,* a viaduct was built which obstructed the owner's view and decreased the value of his property. The Court found the value of the property was diminished since a willing purchaser would not pay as much for a residential lot facing an overpass, where the view of the city was obstructed and where there was a direct

interference with residential privacy. _Id._ at 928. The Court found that based on these facts, the trial court was correct in finding a compensable taking. _Id._ at 929.

The Court in _Miya_ was careful to distinguish between structures in the public right-of-way constructed under the exercise of state police powers which incidentally diminish property values but do not impair property rights or pose "peculiar injury," and those state actions which substantially diminish property value by impairing appurtenant property rights or causing "peculiar injury."

> The erection of a permanent structure within a public highway of such a character as to rank as a proper highway use, even if it diminishes the value of abutting property, is not in and of itself a damage in the constitutional sense. Unless the structure violates some right appurtenant to the abutting property or otherwise inflicts some special and peculiar injury the owner is not entitled to compensation.

_Id._ at 929.

Where a right of access is impaired but not to the degree of impairment in _Hampton,_ the Utah Supreme Court has found that there was no taking when the state, through the exercise of its police powers, undertakes highway improvements. In _Bailey Serv. & Supply Corp. v. State of Utah,_ 533 P.2d 882 (Utah 1975), the Road Commission built a viaduct which directly interfered with the property owner's access to his warehouse. After the construction of the viaduct, large tractor trailers were no longer able to maneuver into the warehouse. The property owner sought compensation on the theory that the state's action in limiting access to the warehouse was a "taking" of a property right appurtenant to the land. The Court determined that the interference complained of was not

enough to amount to a taking. _Id._ at 884. "Prior decisions of this court have established the principle that there can be no recovery from the State for damages where the construction of the highway or the erection of structures within the public right-of-way impair or adversely affect the convenience of access to the property of an abutting owner." _Id._

However, the property owner in _Bailey_ did not make a claim that his property had been diminished in value. He only claimed that access to his property had been impaired. Other Utah cases have also held that where the state exercises its police powers and thereby merely impairs the right-of-way of a property owner, compensation from the state is properly denied. _See, e.g., Holt v. State of Utah,_ 30 Utah 2d 4, 511 P.2d 1286, 1286 (1973) (construction of an underpass which impaired access was not a "taking"); _Springville Banking Co. v. Burton,_ 10 Utah 2d 100, 349 P.2d 157 (1960) (construction of a median which impaired access was not a "taking"). However, none of the impairments in these cases rose to the substantial degree of impairment in _Hampton,_ as there still existed reasonable means of access to the properties in question. Nor was substantial diminution in value to the property claimed as an adverse impact of the state's highway improvements, as in _Miya._

While it must be conceded that these precedents are not entirely consistent, we believe they can be largely harmonized if viewed as establishing three general principles: 1) Where governmental action, not amounting to a physical taking, effectively deprives a property owner of reasonable access [3] to property, the owner is entitled to compensation, _e.g., Hampton;_ 2) Where governmental action, not amounting to a physical taking, merely interferes with an owner's access to property, the owner is

---

**3.** The Court in _Hampton_ concluded its opinion with a reference to "free and convenient access" to property. 445 P.2d at 712. Earlier in its opinion, however, it quoted with approval language couched in terms of "reasonable access

under the existing facts and circumstances." _Id._ at 711. We do not believe the Court meant "free and convenient access" to be anything other than "reasonable access."

*not* entitled to compensation so long as the owner still has reasonable access, *e.g., Bailey;* 3) Where governmental action, not amounting to a physical taking, substantially impairs a right appurtenant to an owner's property, or otherwise causes peculiar injury, and thereby results in substantial devaluation, the owner is entitled to compensation, *e.g., Miya.*

### Conclusion

■ The trial court's review of the applicable cases suggested to it the propriety of focusing only on the availability of access to appellants' property. The trial court found that despite the construction of the curb and the diminished parking spaces, appellants nevertheless enjoy reasonable access to their property. Unlike in *Hampton,* the court noted, their only right of access was not substantially obstructed; they may still reasonably enter and exit their property. The difficulty with this approach is that it misses the gravamen of appellants' complaint, which was not that their access, as such, had been substantially impaired, but rather that they had been deprived of valuable parking spaces.

At the risk of oversimplifying, we believe the trial court erred in this way: While the court correctly concluded that this case was not one governed by the first principle described above, it mistakenly concluded that it was governed by the second principle when in fact it is a case properly analyzed under the third principle.[4] The City's action did not constitute a physical taking. Indeed, it was apparently careful to avoid taking any of appellants' property outright. *See* Note 1, *supra.* However, there is little question but that the City's action has substantially impaired appellants' long-stand-

ing right to utilize their property for storefront parking and has caused them direct, peculiar injury. It appears their commercial property has been devalued as a result of the City's action.

Of course, especially in the case of Distributors, questions remain concerning appellants' claims. While we are persuaded that Three D's loss of parking spaces constitutes a substantial impairment under the third principle, the situation concerning Distributors is less clear. *See* Note 2, *supra.* As to both appellants, whether the apparent devaluation is substantial also remains unresolved, as does the amount of any compensation to which appellants might be entitled. Accordingly, the judgment appealed from is reversed and the case is remanded for new trial or such other proceedings as might be appropriate in accordance with this opinion. *See Halladay v. Cluff,* 739 P.2d 643, 645 n. 5 (Utah Ct.App.1987) ("Trial courts are in a much better position to evaluate an entire case, including its nuances and undisclosed pitfalls, than an appellate court. It is for this reason that where, as in this case, all possible ramifications of a decision on appeal may not be readily apparent, a case will be remanded for such proceedings as are appropriate in view of the guidance offered in the opinion."). The parties shall bear their own costs of appeal.

BILLINGS and GREENWOOD, JJ., concur.

---

**4.** We note, however, that it is possible to reach the same result using "right of access" analysis. In *Keiffer v. King County,* 89 Wash.2d 369, 572 P.2d 408 (1977), for example, a county made improvements within its right-of-way, without physically taking or condemning any of plaintiff's property. Subsequent to the improvements, plaintiff's parking was restricted from 18 spaces to some five spaces. The Washington Supreme Court found that the substantial inter-

ference with the property owner's use of his parking spaces constituted a taking. *Id.* 572 P.2d at 411. The court reached this result by focusing on the impairment of what it referred to as the "right of access." *Id.* at 410. We believe our analysis is preferable because it focuses on the real injury in cases like the instant one, namely the loss of parking spaces and the resulting impact on business and property value.