The CARPET BARN, a Utah corporation; Kenneth MacQueen and Harla MacQueen, Plaintiffs and Appellants,

v.

STATE of Utah, By and Through its DEPARTMENT OF TRANSPORTATION, John Nye and John Does 1 through X, Defendants and Respondents.

No. 890315–CA.

Court of Appeals of Utah.

Jan. 24, 1990.

---

THERE IS NO COVERAGE

....

2. FOR ANY BODILY INJURY TO:

....

c. YOU.

Clark W. Sessions and John F. Clark, Salt Lake City, for plaintiffs and appellants.

R. Paul Van Dam and Stephen C. Ward, Jody K. Burnett and Anne Swensen, Salt Lake City, for respondent, State.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Appellants, The Carpet Barn, Kenneth MacQueen, and Harla MacQueen, appeal from a final judgment in their favor for "inverse condemnation" and severance damages, and from denial of their motion for additur or, in the alternative, for a new trial. We reverse and remand.

In 1971, the MacQueens purchased the subject property at 3725 Redwood Road, in Salt Lake City. The MacQueens have operated a retail carpet and floor covering outlet, called "The Carpet Barn," on the property since 1971. The property has 192 feet of frontage on the west side of Redwood Road. The State maintained a right-of-way line on Redwood Road twenty feet from the front of the Carpet Barn building and thirty-eight feet from the traveled way. Since 1971, appellants and their customers have used the right-of-way to enter and exit the property. This allowed Carpet Barn's patrons to park in front of the building and maneuver into traffic without using the traveled asphalt portion of the then existing Redwood Road. Available parking spaces in front of the building numbered between fifteen and twenty.

In 1984, the Utah Department of Transportation negotiated with appellants to acquire a strip of property along the frontage of their property for a highway widening project. Appellants refused the State's offer and the road widening plans were altered to proceed without acquiring appellants' property. The State constructed a retaining wall across the front of appellants' property along the right-of-way boundary. The wall ranged from sixteen inches to two feet high and was topped by a four-foot high chain link fence. The fence was removed prior to the time of trial. When the road project was completed it was discovered that footings constructed by the State encroached on appellants' property six inches. Access to appellants' property was limited by the retaining wall to a twenty-foot wide driveway which ran from Redwood Road to the rear of appellants' property. The State's minimum requirement for commercial driveways is twenty-five feet. The wall built by the State prevented parking in front of the building, eliminating the fifteen to twenty diagonal parking spaces.

At trial, the jury was instructed that appellants' property had been taken. The jury awarded $289 for the fair market value of the property taken by construction of the footings on appellants' property and $578 for the fair market value of the temporary construction easement. The jury also awarded $4,543 in severance damages to the remaining property not taken by the State. Appellants filed a motion for additur or in the alternative for a new trial based on the jury's alleged misapplication of the proper formula in calculating severance damages. The court denied the motion. Appellants now appeal.

On appeal, we address the following issues: (1) Is the jury verdict for severance damages supported by sufficient evidence and was it properly calculated? (2) Did the court err by admitting evidence of the cost to landscape? (3) Did the court err by excluding appellants' evidence concerning the chain link fence and access to other properties? and (4) Did the court err by failing to give appellants' requested jury instructions?

## INSUFFICIENCY OF EVIDENCE

On appeal, when a trial court's denial of a motion for a new trial is challenged on the basis that there was insufficient evidence to support the verdict, "we reverse only if, viewing the evidence in the light most favorable to the party who prevailed, we conclude that the evidence is insufficient to support the verdict." *Hansen v. Stewart*, 761 P.2d 14, 17 (Utah 1988). Generally speaking, a jury award for compensation in an eminent domain case is supported by competent evidence "if the award of compensation was within the estimate of value given by one of the expert witnesses." *Utah Dep't of Transp. v. Jones*, 694 P.2d 1031, 1033 (Utah 1984). A similar standard applies in a jury award for severance damages.

Severance damages have been defined as "those caused by the taking of a portion of the parcel of property where the taking or the construction of the improvement *on that part* causes injury to that portion of the parcel not taken." *Utah Dep't of Transp. v. D'Ambrosio*, 743 P.2d 1220, 1222 (Utah 1987) (emphasis in original). The trial court properly instructed the jury that the measure of severance damages is the difference between the val-

ue of the remaining property prior to the taking and the value of the remaining property after the taking. *See Utah Dep't of Transp. v. Rayco Corp.*, 599 P.2d 481, 489–90 (Utah 1979). *See also Herring v. Platte River Power Auth.*, 728 P.2d 709, 711 (Colo.1986). The right of access is an easement appurtenant to land of an abutting owner on a street, and constitutes a property right which may not be taken without just compensation. *Utah State Rd. Comm'n v. Miya*, 526 P.2d 926, 928–29 (Utah 1974). Also, a jury award for condemnation compensation is not supported by the evidence where based on inadmissible evidence. *Jones*, 694 P.2d at 1033.

■ In this case, Appellants' expert witness testified that the value of the property prior to the taking was $225,684; that the State's action changed the highest and best use of the property from commerical to light industrial; and that, as a result, the value of the property after the taking was $88,905. Had the jury adopted appellants' calculations, severance damages would be the difference—$137,778.

The State's appraiser testified that the value of the property prior to the taking was $306,000. He did not estimate the value of the property after the taking; instead, he testified that the property had depreciated because of functional obsolescence, which he explained to be problems inherent in the building as originally constructed. The State's expert testified that when appellants converted the property from manufacturing use to commercial use after their 1971 purchase, they resolved their parking needs by using the State's right-of-way for parking. As a result, the State did not create the problem, but when it elected to utilize its existing right-of-way, the functional obsolescence, which had lain dormant since 1971, became operational. Therefore, according to the State's expert, the actual value of the property was the same before the taking as it was after the taking. He opined further that although the State's action impaired appellants' long established practice of utilizing their property for store-front parking, the State was not the legal cause of appellants' injury. The State's expert testified that appellants could provide substitute parking by tearing down a structure and converting the space to parking at a cost of $25,000, and erecting a replacement structure for $98,000. In addition, he testified, over objection, that it would cost $4,543 to properly landscape in front of the building, next to the wall erected by the State.

The jury awarded $4,543 for severance damages, the exact amount that the State testified was needed to landscape the front of the building. Appellants contend that the $4,543 figure adopted by the jury was improper as it is not the difference in value of the property before and after the taking, but only the cost for curing the front yard appearance. The State counters that testimony regarding landscaping had nothing to do with curing the parking problem but was offered as a means of increasing the value of the unusable parking strip. Consequently, argues the State, by awarding the cost of landscaping as severance damages, appellants were in the same financial position both before and after the taking, in terms of the property they were legally entitled to use.

The State's argument that it was not the legal cause of diminution of market value of appellants' property runs counter to *Three D Corp. v. Salt Lake City*, 752 P.2d 1321, 1326 (Utah Ct.App.1988). The facts in *Three D Corp.* are similar to the case at hand. Salt Lake City, after unsuccessfully attempting to purchase a portion of appellants' property, extended the street surface to the existing legal boundary and constructed a solid curb along nearly the entire length of appellants' property, where before there had been continuous and accessible frontage along the street. As a result, appellants were deprived of most of their former parking spaces. This court held that there is a right to compensation where the State's action, although not directly constituting a physical taking, "substantially impaired appellants' long-standing right to utilize their property for storefront parking and has caused them direct, peculiar injury" and consequent devaluation of their commercial property. *Id.*

*Three D Corp.* noted that if the city had condemned part of appellants' property to construct a sidewalk, it would clearly have been required to compensate the owners for the decrease in value "attributable to the lost parking spaces." *Id.* at 1323 n. 1. Similarly in this case, the State's construction of the wall extending along the legal right-of-way line deprived appellants of their long-standing right to utilize part of their property for store-front parking, thus entitling them to compensation for any decrease in value caused by the loss of parking spaces.

The State argues that *Three D Corp.* is inapplicable to this case because there was an actual taking here, albeit an inadvertent one because of the six-inch error in placement of the footings. By contrast, in *Three D Corp.*, there was no actual taking because the curb constructed by Salt Lake City did not encroach on Three D's property. While this factual distinction exists, the State's argument is misguided. If compensation for lost parking spaces was appropriate in *Three D. Corp.* even absent a physical taking, surely it is appropriate in this case, where it is undisputed that a physical taking occurred.

Appellants are entitled to severance damages calculated as the difference in value of the property before and after severance, to include consideration of the lost parking spaces, as well as any decrease in market value because of limited access. The jury was instructed, without objection, that the differential in market value was the appropriate formula.[1] The jury's award of $4,543, however, is the cost to landscape the front of the building, irrelevant to the proper formula for determining damages, and not competent evidence of market value. Moreover, it does not fall within the range of estimates of either expert. Therefore, the jury's award is not supported by the evidence.[2]

## EXCLUSION OF EVIDENCE

Appellants next claim the court erred in excluding evidence of the chain link fence erected by the State and of access allowed other comparable properties. In reviewing questions of admissibility of evidence at trial, we give deference to the trial court and will not overturn its ruling absent an abuse of discretion. *Whitehead v. American Motors Sales Corp.*, 101 Utah Adv.Rep. 27, 28 (1989).

■ Appellants argue that exclusion of the chain link fence evidence denies them the benefit of having the jury consider their fullest measure of damages. The chain link fence was a temporary obstruction, however, which was removed prior to the time of trial. Moreover, the fence had no effect on the loss of parking spaces. We conclude that the trial court correctly determined that evidence of the fence was irrelevant in calculating severance damages.

■ Appellants also claim that they were prejudiced by the exclusion of evidence of access allowed to other comparable properties since a major element of their severance damages was that the limitation of access and loss of parking spaces necessarily changed the highest and best use of the property from commercial to light industrial. We agree with the State that the issue of reasonable access as it affects a determination of severance damages is dependent on the particular facts and circumstances of each case. *See State Rd. Comm'n v. Christensen*, 13 Utah 2d 224, 371 P.2d 552, 556 (1962) (proximity and severance damages paid to a neighboring property owner, absent a showing of complete similarity, are dependent on the facts and circumstances of each case); *see also State Rd. Comm'n v. Taggart*, 19 Utah 2d

---

1. Because there was no objection to the court's instruction on the method of calculating severance damages, we need not determine whether this is the *only* permissible damage formula. See, however, the concurring opinion of Justice Hall and dissenting opinions of Justices Stewart and Crockett in *Utah Dep't of Transp. v. Rayco Corp.*, 599 P.2d 481, 493–96 (Utah 1979).

2. It follows that the State's expert's testimony about landscaping costs, objected to by appellants, was erroneously admitted. In the posture of this case, such testimony was irrelevant to a calculation of the difference in market value before and after the severance.

247, 430 P.2d 167, 170 (1967). Because appellants failed to demonstrate complete similarity between the other properties and their own circumstances, the court did not abuse its discretion in refusing to allow evidence of access afforded other properties, especially since such evidence would have little bearing on the question of the diminished value of this property as a result of the severance.

## JURY INSTRUCTIONS

Because an appeal challenging the refusal to give jury instructions presents questions of law only, we grant no particular deference to the trial court's rulings. *Ramon v. Farr*, 770 P.2d 131, 133 (Utah 1989).

> A party is entitled to have his theories of the case submitted to the jury provided there is competent evidence to support them. Failure to give requested instructions is reversible error if it tends to mislead the jury to the prejudice of the complaining party or erroneously advises on the law.

*Mikkelsen v. Haslam*, 764 P.2d 1384, 1387 (Utah Ct.App.1988) (citations omitted).

■ Appellants first object to the trial court's failure to give proffered Instruction No. 26, which states: "You are instructed that the evidence in this case is that the State of Utah did not attempt, in any way, to restrict highway access of the Carpet Barn property until August, 1985." Appellants sought by Instruction No. 26 to give the jury a starting point to calculate severance damages. Instruction No. 16, however, which was given to the jury, states that the fair market value of the property "will be determined as of the 27th day of August, 1985," and provides the jury the appropriate date from which to calculate damages. Further, whether the State ever attempted to utilize its right-of-way prior to the date of the actual taking is irrelevant to the calculation of severance damages.

Appellants also object to the elimination of language from their proffered Instructions No's. 25 and 28. The language eliminated was to the effect that rights of ingress and egress and rights to access, light, and air could be "established by long-term use or travel." We find that a reading of these two instructions, absent the language eliminated still adequately reflects appellants' theory. We conclude that any error in refusing to include this language in the proffered instructions was harmless. *See* Utah R.Civ.P. 61.

## REVERSE AND REMAND

■ The Utah Supreme Court has held that an appellate court may order an additur, or in the alternative, a new trial in appropriate circumstances. *Dupuis v. Nielson*, 624 P.2d 685, 686 (Utah 1981); *Bodon v. Suhrmann*, 8 Utah 2d 42, 327 P.2d 826, 828 (1958). We are unwilling to order an additur in this matter, as urged by appellants, because the evidence indicates a possible broad variance in appropriate severance damages. We recognize, further, that trial courts are in a much better position to evaluate all the nuances of a case than is an appellate court. *See Three D Corp.*, 752 P.2d at 1326; *Halladay v. Cluff*, 739 P.2d 643, 645 n. 5 (Utah Ct.App. 1987). We, therefore, reverse and remand this case for a new trial or such other proceedings as might be appropriate in accordance with the views expressed in this opinion.

GARFF and ORME, JJ., concur.