2002 UT 107

**STATE of Utah and its Agency the Utah Department of Transportation, Plaintiff and Appellee,**

v.

**HARVEY REAL ESTATE, a limited partnership, Defendant and Appellant.**

**Nos. 20001149, 20010005.**

Supreme Court of Utah.

Nov. 5, 2002.

Mark L. Shurtleff, Att'y Gen., Steven F. Alder, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Robert E. Mansfield, Todd D. Weiler, Craig R. Kleinman, Salt Lake City, for defendant.

HOWE, Justice:

## INTRODUCTION

¶ 1 We granted a petition for interlocutory appeal filed by defendant Harvey Real Estate, a limited partnership, to review the trial court's determination that defendant was not entitled to introduce certain evidence in an eminent domain proceeding. We also granted a cross-petition filed by plaintiff Utah Department of Transportation (UDOT) to review the trial court's ruling that UDOT had abandoned a perpetual right-of-way it had over part of the Harvey property.

## BACKGROUND

¶ 2 Harvey Real Estate owns approximately 160 acres of vacant land in Davis County, Utah. Until 1999, the west edge of the property abutted Highway 89, a major transportation route. Approximately 85 feet of the north edge of the property abuts Old Mountain Road. The intersection of these two roads lies directly adjacent to the property's northwest corner.

¶ 3 Through the years, Highway 89 has undergone several expansions designed to compensate for increases in traffic. Several of these expansions have resulted in the condemnation of portions of the Harvey property by UDOT or its predecessor, State Road Commission of Utah. In 1936, pursuant to a condemnation proceeding, Harvey's predecessor in title granted the State Road Commission a perpetual right-of-way over a section of the property abutting Highway 89 (the right-of-way). The stated purpose of the right-of-way was to grant UDOT a "perpetual Right-of-way for highway purposes," and for many years the land was used accordingly. In a 1947 condemnation action, the State Road Commission acquired fee title to most, but not all, of the land subject to the 1936 easement. The State Road Commission later erected a fence a fixed distance from the centerline of the highway separating the fee title property from the property that remained subject to the 1936 right-of-way. This fence has remained in place, and UDOT has not used the strip of property still subject to the right-of-way since about 1951. The strip has been used by Harvey and others for grazing and other private purposes.

¶ 4 The Harvey property has direct access to Old Mountain Road at the northwest corner of the property along approximately 85 feet of frontage. In 1947, Highway 89 was made a limited access highway where it bordered the Harvey property. Therefore, from that year until 1999, the property's only direct access to Highway 89 was through a single wide, gated agricultural entrance approximately 1,000 feet to the south of the intersection.

¶ 5 In 1999, in order to decrease the number of accidents on Highway 89, UDOT closed the Highway 89/Old Mountain Road intersection, thus cutting off access to Highway 89 from Old Mountain Road. UDOT also determined to build a frontage road from the intersection to the Cherry Hill interchange, which is approximately .5 miles south of the intersection. The frontage road completely separates the Harvey property from High-

way 89, eliminating direct access to the property from the highway.

¶ 6 Accordingly, this condemnation action was brought in 1999 by UDOT to acquire approximately 1.36 acres of the Harvey property which UDOT needed to construct the frontage road from the intersection to the Cherry Hill interchange. Believing that it still owned a right-of-way over the remaining strip of the 1936 right-of-way, UDOT did not seek to condemn it. Harvey contested the existence of the right-of-way, arguing that the State had abandoned it when the State separated the right-of-way from the highway by means of a fence. After a hearing on the matter, the trial court concluded as a matter of law that UDOT's predecessor, the State Road Commission, had "abandoned all right to future use and all ownership in the Balance of the 1936 Right–Of–Way and discontinued using that property for highway purposes" and that, consequently, Harvey owned the strip free of any right-of-way held by UDOT.

¶ 7 Thereafter, UDOT filed a motion in limine seeking to preclude Harvey from presenting expert testimony at trial that the closure of the Old Mountain Road/Highway 89 intersection will substantially decrease the value of the remaining Harvey property. The trial court granted the motion. It concluded that evidence of alleged damages from the intersection closure was not admissible because any damages sustained by Harvey were not the result of the loss of land to be used in building the frontage road and thus did not qualify as severance damages. We granted Harvey's interlocutory appeal and UDOT's cross-appeal.

### ANALYSIS

¶ 8 Harvey contends that the trial court erred and contravened Utah Code Ann. § 78–34–10 (1996) in not allowing it to present evidence of the damages it will sustain from the closure of the Highway 89/Old Mountain Road intersection. UDOT, in its cross-appeal, asserts that the trial court erred by ruling that the remaining strip of the 1936 right-of-way had been abandoned by UDOT and its predecessor. We address each issue in order.

## I. SEVERANCE DAMAGES

### A.

¶ 9 Section 78–34–10 provides in part: The court, jury or referee must hear such legal evidence as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

. . .

(2) if the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff.

The trial court ruled that under this section Harvey could not present evidence of any damage caused by the closure of the Highway 89/Old Mountain Road intersection because the closure was not caused by the severance of Harvey's property. Harvey argues against this result, contending that by limiting the evidence of severance damages to "those harms flowing only from the actual taking itself," the trial court ignored the statutory language allowing Harvey to present evidence of damages stemming from "the construction of the improvement in the manner proposed." We disagree.

¶ 10 Section 78–34–10 gives a landowner the right to present evidence of damages caused by the construction of the improvement made on the severed property. It does not give the landowner the right to present evidence of damages caused by other facets of the construction project. Were the opposite true, a landowner would be entitled to present evidence unrelated to the taking. For example, where property was taken for a multi-mile-length road construction project, a landowner would be entitled to present evidence of all damages conceivably stemming from the road construction, even those damages attributable to construction occurring miles away. This would defeat the purpose of our eminent domain statutes, which are designed to compensate the landowner only for his loss of property rights. Contrary to Harvey's argument, this interpretation does not render any part of section 78–34–10

meaningless; evidence of damage caused by both the severance alone and construction on the severed property may be presented.

¶ 11 We held essentially the same in *Utah Department of Transportation v. D'Ambrosio*, 743 P.2d 1220, 1222 (Utah 1987), although we did not reference section 78–34–10(2). There we stated that "[s]everance damages are those *caused by* the taking of a portion of the parcel of property where the taking *or the construction of the improvement on that part causes* injury to that portion of the property not taken." (Emphasis added.) Our holding today also accords with the well-established common law principle that severance damages "may be made for any diminution in the value of [an owner's non-condemned land], as long as those damages were *directly caused by the taking itself* and by the condemnor's use of the land taken." 26 Am.Jur.2d *Eminent Domain* § 368 (1996) (emphasis added); *see also* 8A Nichols, *Eminent Domain* § 16.02[1] (3d ed.2002) (stating "severance damages may be defined as damages or diminution in the value of the remainder *resulting from the taking of a portion of a tract of land*" (emphasis added)). We have explicitly adopted this principle in Utah. *See City of Hildale v. Cooke*, 2001 UT 56, ¶ 3 & n. 1, 28 P.3d 697 (stating "severance damages may occur where a *partial taking to a parcel of land causes harm* to the portion of the property not condemned" (emphasis added)); *State by Rd. Comm'n v. Stanger*, 21 Utah 2d 185, 186, 442 P.2d 941, 942 (1968) ("[S]everance damages were those suffered by a devaluation of the owner's property not taken, the causa causa causans of which was the actual taking of a part of a unit of property, the whole of which he previously owned.").

¶ 12 Harvey has not shown that any damage sustained by the closure of the intersection has been caused by the severance of its land. Indeed, it recognizes that it is "[s]eeking damages for devaluation of its property as a result of loss of access" to Highway 89. Harvey seeks to establish a causal connection between its alleged damages and the taking by arguing that the closure of the Highway 89/Old Mountain Road intersection was made possible only by the taking of Harvey's property, the inference being that the taking caused the closure. UDOT could have chosen to close the intersection independently of the taking, however. The taking may be somewhat related to the closure, but it did not cause the closure, nor did it cause the damages that Harvey claims as a result of the closure. As the trial court correctly observed, owners of neighboring properties may be impacted by the closure of the intersection but they, likewise, would not be entitled to seek compensation.

### B.

¶ 13 Harvey attempts to avoid this result by relying on our opinion in *Utah State Road Commission v. Miya*, 526 P.2d 926, 928–29 (Utah 1974), where we held that rights of

> access, light, and air are easements appurtenant to the land of an abutting owner on a street; they constitute property rights forming part of the owner's estate. These substantial property rights ... may not be taken away or impaired without just compensation.

We stated that in order to recover for such a taking, an owner must show that "the structure violates some right appurtenant to the abutting property or otherwise inflicts some special and peculiar injury." *Id.* As with other takings, where an appurtenant right is severed from the property, under section 78–34–10 damages may be awarded for the losses caused by the severance of the right.

¶ 14 Harvey argues that it is entitled to relief under *Miya* because it is being "deprived of access." While we recognized in *Miya* that the right of access is an appurtenant right, this right

> "does not include the right to travel in any particular direction from one's property or upon any particular part of the public highway right-of-way.... Nor does the right of ingress or egress to or from one's property include any right in and to existing public traffic on the highway, or any right to have such traffic pass by one's abutting property."

*Hampton v. State*, 21 Utah 2d 342, 346–47, 445 P.2d 708, 710–11 (Utah 1968) (quoting *State ex rel. State Highway Comm'n v. Meier*, 388 S.W.2d 855, 857, 859, 860 (Mo.1965)).

The interest protected simply entails the "right of ingress and egress to and from . . . property and the abutting public highway." *Id.* at 711. Harvey's property may be accessed through both the new frontage road and Old Mountain Road; consequently, its right of access has not been denied. The right does not extend so far as to guarantee a property owner that his property will be accessed through specific intersections or that the roads accessing his property will be easily accessed from other thoroughfares. *See, e.g., Holt v. Utah State Rd. Comm'n,* 30 Utah 2d 4, 511 P.2d 1286, 1286 (1973) (stating "the law has long been established in this State that under those circumstances there can be no recovery from the State for damages because the construction of a highway may impair or adversely affect the convenience of access to property"), *overruled in part on other grounds by Colman v. Utah State Land Bd.,* 795 P.2d 622, 632 (Utah 1990). Thus, UDOT has not "taken" Harvey's right of access, and Harvey is not entitled to recover severance damages on that theory.

¶ 15 Harvey also contends that under *Miya* he is entitled to severance damages because he has suffered a "special and peculiar injury." We have never explained what we meant in *Miya* by this language. To the extent that it suggests that a landowner may recover severance damages without either a physical taking or the taking of the few appurtenant rights that this court has recognized, it appears inconsistent with section 78–34–10 because, as noted above, this section requires that damages be caused by the severance of the property or the construction of improvements on the severed property. § 78–34–10. Unless the "special and peculiar injury" results from such a taking, an award of severance damages for such injuries would be contrary to the statute. As a practical matter, where a taking has occurred an owner would not need to rely on the "special and peculiar injury" he has suffered because he could recover directly for the taking itself. Accordingly, the trial court did not err in refusing to allow Harvey to prove section 78–34–10 damages on this ground.

## II. ABANDONMENT

■ ¶ 16 UDOT contends that the trial court erred in determining that it had abandoned its right-of-way over the remaining strip subject to the 1936 condemnation when it constructed a fence separating the strip from the highway. It asserts that our statutes have consistently required that portions of a highway may be abandoned only by affirmative formal action by a public authority with authority to do so. We agree.

¶ 17 Section 36–1–3 of Utah Code Ann. (1943) provided: "All highways once established must continue to be highways until abandoned by order of the board of county commissioners of the county in which they are situated or other competent authority." This statute has remained essentially unchanged since 1951, the year the remaining strip was fenced off. *See* Utah Code Ann. § 72–5–105 (1999) (stating "[a]ll public highways once established shall continue to be highways until abandoned or vacated by order of the highway authorities having jurisdiction . . ."). These statutes unambiguously establish that all public highways remain as such unless they are officially abandoned or vacated by order of the proper authority. They make no allowance for any other type of abandonment or vacation. *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.,* 744 P.2d 1376 (Utah 1987).

¶ 18 In the instant case, once the land was dedicated to highway use by way of the 1936 right-of-way, it could not be abandoned or revert back to its owners without an official order of a competent authority. Harvey has failed to establish that such an order was made. Consequently, the trial court erred in ruling that UDOT had abandoned its right-of-way.

■ ¶ 19 Harvey endeavors to avoid this outcome by urging us to apply common law rules concerning the abandonment of easements. This we cannot do. Our statute controls and makes no distinction between highways where the public holds fee title or only a right-of-way as here. To the extent that it is inconsistent with common law property principles, it preempts them.

## CONCLUSION

¶ 20 The trial court correctly ruled that Harvey was not entitled to prove damages caused by the closing of the intersection. The trial court erred by ruling that UDOT had abandoned its right-of-way over the remaining strip of the 1936 condemnation.

¶ 21 Affirmed in part; reversed in part.

¶ 22 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice RUSSON, and Justice WILKINS concur in Justice HOWE's opinion.