2004 UT App 405

**INTERMOUNTAIN SPORTS, INC.,
Plaintiff and Appellant,**

v.

**DEPARTMENT OF TRANSPORTATION
and Murray City, Defendants and
Appellees.**

No. 20031029–CA.

Court of Appeals of Utah.

Nov. 12, 2004.

B. Ray Zoll, Murray, and John Martinez, Salt Lake City, for Appellant.

Mark L. Shurtleff and Randy S. Hunter, Salt Lake City, for Appellees.

Before BILLINGS, P.J., and DAVIS and GREENWOOD, JJ.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 Intermountain Sports, Inc. (Intermountain) appeals the trial court's grant of Utah Department of Transportation's (UDOT) mo-

tion for judgment on the pleadings pursuant to rule 12(c) of the Utah Rules of Civil Procedure. Intermountain argues that the trial court erred by granting UDOT's motion because Intermountain has alleged facts sufficient for both its inverse condemnation and its uniform operation of laws claims. We affirm.

## BACKGROUND

¶ 2 Intermountain owned and operated a recreational vehicle sales business located at 4225 South 500 West in Murray, Utah, near the 4500 South off-ramp from Interstate 15 (I–15). Intermountain's business was accessible only from 500 West and not directly accessible from either I–15 or 4500 South.

¶ 3 From approximately July 1997 to May 2001, UDOT conducted a massive reconstruction of I–15 (I–15 reconstruction). During the I–15 reconstruction, UDOT periodically closed both the 4500 South off-ramp and 4500 South to eastbound and westbound traffic. However, UDOT did not perform work on 500 West, block or disrupt traffic on 500 West, or block direct access to Intermountain's business premises on 500 West.

¶ 4 Intermountain filed a complaint alleging six causes of action against UDOT, two of which are relevant to this appeal. First, Intermountain alleged that the I–15 reconstruction, and specifically, the closure of the 4500 South off-ramp and 4500 South, blocked Intermountain's "easement of access" to its business premises and that this constituted a "taking" under the Takings Clause of the Utah Constitution. In particular, Intermountain asserted that by "taking" its "easement of access," UDOT (1) "substantially and materially impaired [Intermountain's] right of access to the I–15 off-ramp at 4500 South and to 4500 South Street as well as [Intermountain's] customers' right of access to 4500 South Street and [Intermountain]"; (2) substantially diminished the value of Intermountain's property; and (3) damaged Intermountain's private property interest for a public use without just compensation.

¶ 5 Second, Intermountain alleged that access from I–15 to its property during the I–15 reconstruction involved a circuitous 2.5-mile loop making it difficult for potential customers driving on I–15 to reach Intermountain. Intermountain claimed that UDOT constructed this circuitous loop so that other businesses received the benefit of direct access to 4500 South off-ramp traffic and that UDOT refused to offer Intermountain a similar benefit, which violated the Utah Constitution's Uniform Operation of Laws provision.

¶ 6 UDOT filed a motion for judgment on the pleadings pursuant to rule 12(c) of the Utah Rules of Civil Procedure. The trial court granted the motion ruling that Intermountain failed to state a claim for either inverse condemnation or violation of uniform operation of laws. Intermountain appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 7 Intermountain argues that the trial court erred by granting UDOT's motion for judgment on the pleadings. "When reviewing a grant of a motion for judgment on the pleadings, this court accepts the factual allegations in the complaint as true; we then consider such allegations 'and all reasonable inferences drawn therefrom in a light most favorable to the plaintiff.'" *Arndt v. First Interstate Bank of Utah, N.A.*, 1999 UT 91, ¶ 2, 991 P.2d 584 (citation omitted). " '[W]e affirm the grant of such motion only if, as a matter of law, the plaintiff could not recover under the facts alleged.'" *Id.* (alteration in original) (citation omitted).

## ANALYSIS

### I. Inverse Condemnation

¶ 8 Article I, section 22 of the Utah Constitution provides, "Private property shall not be taken or damaged for public use without just compensation." Utah Const. art. I, § 22. "Under Utah law, 'the takings analysis has two principal steps. First, the claimant must demonstrate some protect[a]ble interest in property. If the claimant possesses a protect[a]ble property interest, the claimant must then show that the interest has been taken or damaged by government action.'" *View Condo. Owners Ass'n v. MSICO, L.L.C.*, 2004 UT App 104, ¶ 35, 90 P.3d 1042 (quoting *Strawberry Elec.*

*Serv. Dist. v. Spanish Fork City,* 918 P.2d 870, 877 (Utah 1996)). Thus, in order to state an inverse condemnation claim, Intermountain must allege in its complaint a protectable property interest that has been taken or damaged by UDOT.

¶ 9 Intermountain's complaint repeatedly characterizes its relevant property interest as an "easement of access ... to the I–15 southbound off-ramp to 4500 South and to 4500 South Street." We agree with the trial court that temporary denial of access to property does not constitute a taking. *See Rocky Mountain Thrift Stores, Inc. v. Salt Lake City Corp.,* 784 P.2d 459, 465 (Utah 1989) ("[T]he mere interference with access to an owner's premises [is] not a 'damaging' or 'taking' within the meaning of article I, section 22 of Utah's constitution.").

¶ 10 In both Intermountain's memorandum in opposition to UDOT's motion for judgment on the pleadings and in its briefs on appeal, Intermountain asserts that its protectable property interest is the right to use its land for a commercial enterprise.[1] Regardless of how Intermountain characterizes its complaint, what Intermountain is claiming is the right to a particular route of ingress and egress to and from Intermountain and the right to have traffic flow in some particular pattern past its premises. It is well established that while property owners have a right of *reasonable access* to and from their property, that right

> does not include the right to travel in any particular direction from one's property or upon any particular part of the public highway right-of-way.... Nor does the right of ingress and egress to or from one's property include any right in and to existing traffic on the highway, or any right to have

such traffic pass by one's abutting property.

*State v. Harvey Real Estate,* 2002 UT 107,- ¶ 14, 57 P.3d 1088 (alteration in original) (quotations and citations omitted); *see also Utah State Road Comm'n v. Miya,* 526 P.2d 926, 928 (Utah 1974) (holding that while the rights of access, light, and air are easements appurtenant to the land of an abutting owner on a street, there is "no property right to a free and unrestricted flow of traffic past [a property owner's] premises, and any impairment or interference with this flow does not entitle the owner to compensation"); *Hampton v. State Road Comm'n,* 21 Utah 2d 342, 445 P.2d 708, 711 (1968) (holding that a property owner's right of ingress and egress to and from his property and the abutting public highway does not "include any right in and to existing public traffic on the highway, or any right to have such traffic pass by one's abutting property"); *State Road Comm'n v. Rozzelle,* 101 Utah 464, 120 P.2d 276, 277 (1941) (McDonough, J., concurring) ("[D]iminution in value of the realty caused by the loss of the flow of traffic to or past defendant's place of business is not compensable.").

¶ 11 While "[t]he kinds of property subject to the [eminent domain] right ... [are] practically unlimited," *Farmers New World Life Ins. Co. v. Bountiful City,* 803 P.2d 1241, 1244 (Utah 1990) (second, third, and fourth alterations in original) (quotations and citation omitted), we are unwilling to adopt the view that a business has a protectable property interest in the mere hope of future sales from passing traffic or that the rerouting of traffic constitutes a compensable taking under article I, section 22 of the Utah Constitution. *See Strawberry Elec. Serv.*

---

1. Even if we were to accept Intermountain's characterization of its property interest, it does not help Intermountain. Intermountain's unilateral expectation of future business falls short of the types of contractual property rights which our supreme court has described as protected. *See Bagford v. Ephraim City,* 904 P.2d 1095, 1099 (Utah 1995). In *Bagford,* the court ruled that the plaintiffs' loss of business from competition with Ephraim City's municipal garbage collection was not property within the meaning of the Utah Constitution's Takings Clause. *See id.* The court stated,

to create a protectable property interest, a contract must establish rights more substantial in nature than a mere unilateral expectation of continued rights or benefits.... Thus, a contract that is terminable at the will of either party does not by itself give rise to a protectable property interest because the mere expectation of benefits under such a contract does not give the promisor a legally enforceable right against a promisee to provide future service and therefore does not by itself provide a basis for compensation for loss of future business. *Id.*

*Dist. v. Spanish Fork City,* 918 P.2d 870, 878 (Utah 1996) ("[T]o create a protect[a]ble property interest, a contract must establish rights more substantial than a unilateral expectation of continued privileges.").

¶ 12 Intermountain does not allege that UDOT performed reconstruction work on 500 West, blocked or disrupted traffic on 500 West, or blocked direct access to its business from 500 West. Because Intermountain does not have a protectable property interest in an "easement of access" to I–15 or 4500 South and because Intermountain was accessible from 500 West during the I–15 reconstruction, Intermountain has not stated an inverse condemnation claim. Therefore, we hold that Intermountain has failed to state a claim for inverse condemnation.

## II. Uniform Operation of Laws

¶ 13 Intermountain argues that the trial court erred by dismissing its denial of uniform operation of laws claim. UDOT argues that Intermountain's complaint fails because (1) the uniform operation of laws clause is not a self-executing constitutional provision, and (2) even if the complaint properly stated a claim, monetary damages are not available as a remedy under the framework set forth in *Spackman v. Board of Education,* 2000 UT 87, 16 P.3d 533. We hold that the uniform operation of laws clause of the Utah Constitution is self-executing but that under the circumstances presented in this case, monetary damages are not available.

¶ 14 Article I, section 24 of the Utah Constitution provides: "All laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. In *Spackman,* our supreme court provided guidance for determining whether a particular constitutional clause is self-executing and whether monetary damages are an available remedy for a violation of a self-executing constitutional provision. *See* 2000 UT 87 at ¶ 1, 16 P.3d 533. The court explained that "a self-executing constitutional clause is one that can be judicially enforced without implementing legislation." *Id.* at ¶ 7.

¶ 15 The uniform operation of laws provision is self-executing because (1) it is presumptively "mandatory and prohibitory" under article I, section 26 of the Utah Constitution and there is nothing in the text that indicates otherwise, Utah Const. art. I, § 26 ("The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."); *see also Spackman,* 2000 UT 87 at ¶¶ 11, 15, 16 P.3d 533; (2) it has been judicially defined and enforced many times without implementing legislation, *see Spackman,* 2000 UT 87 at ¶¶ 12, 16, 16 P.3d 533; *see also Pinetree Assocs. v. Ephraim City,* 2003 UT 6, ¶ 17, 67 P.3d 462; and (3) the historical context in which the framers adopted the clause shows that they intended to constitutionalize existing concepts, like equal protection and due process, that did not require implementing legislation. *See Spackman,* 2000 UT 87 at ¶ 13, 16 P.3d 533; *Malan v. Lewis,* 693 P.2d 661, 669 (Utah 1984) (holding that the uniform operation of laws and equal protection clauses "embody the same general principle: persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstances were the same").

¶ 16 The Utah Constitution does not provide monetary damages for violations of constitutional provisions except for the takings clause. *See Spackman,* 2000 UT 87 at ¶ 20, 16 P.3d 533. "To ensure that damage actions are permitted only 'under appropriate circumstances,'" our supreme court has held "that a plaintiff must establish the following three elements before he or she may proceed with a private suit for damages" for a constitutional violation. *Id.* at ¶ 22 (quoting Restatement (Second) of Torts § 874A cmt. d, at 303). Accordingly, Intermountain must have alleged facts sufficient to establish the following three elements to survive UDOT's motion for judgment on the pleadings.

¶ 17 First, Intermountain must establish that it "suffered a 'flagrant' violation of [its] constitutional rights." *Id.* at ¶ 23 (citation omitted). Thus, Intermountain must have alleged that UDOT "violated 'clearly established' constitutional rights 'of which a reasonable person would have known.'" *Id.* (citations omitted). Intermountain stated in its complaint that UDOT violated article I, section 24 of the Utah Constitution by

arbitrarily and capriciously providing other businesses with direct and beneficial access to 4500 South Street and by configuring such access so as to direct traffic flow to those businesses, south of [Intermountain's property] and north and west of [Intermountain's property], while at the same time refusing to offer such accommodations to [Intermountain] who paid substantial taxes to the City and State and who relied on the City and UDOT's representations.

It is questionable whether Intermountain alleged a "flagrant" violation of its constitutional rights. We need not decide, however, as Intermountain has failed to meet the other two elements.

■ ¶ 18 Second, Intermountain "must establish that existing remedies [do] not redress [its] injuries." *Spackman*, 2000 UT 87 at ¶ 24, 16 P.3d 533. This "requirement is meant to ensure that courts use their common law remedial power cautiously and in favor of existing remedies." *Id.* It is not at all clear from the allegations in the complaint that existing remedies could not have redressed Intermountain's injuries. Under the transportation regulations of the Utah Administrative Code, Intermountain should have exhausted its administrative remedies prior to seeking judicial review. *See* Utah Admin. Code R907–1–15 ("Persons must exhaust their administrative remedies in accordance with [the Administrative Procedures Act], prior to seeking judicial review."); *Patterson v. American Fork City*, 2003 UT 7,¶ 18, 67 P.3d 466 (holding that the plaintiffs' "bald assertion that the exhaustion requirement does not apply to state constitutional claims is not persuasive").

¶ 19 Utah Administrative Code R907–1–3 provides for the commencement of appeals of UDOT actions by a member of the public. *See* Utah Admin. Code R907–1–3. Intermountain asserts in its complaint that in reliance on statements from UDOT officials that its "concerns would be taken into consideration," it did not "pursue action against UDOT ... and has only now been able to determine its ascertainable damages, making its claims ripe for adjudication." However, this does not provide a legitimate reason to "relieve a party seeking judicial review of the requirement to exhaust any or all administrative remedies." Utah Code Ann. § 63–46b–14(2)(b)(i), (ii) (2003) (providing that a party may seek judicial review instead of exhausting administrative remedies only when "(i) the administrative remedies are inadequate; or (ii) exhaustion of remedies would result in irreparable harm disproportionate to the public benefit derived from requiring exhaustion"). In addition, Intermountain is not entitled to sit on its rights while it accrues damages when it had notice that other businesses allegedly received accommodations it did not, arguably in violation of the uniform operation of laws provision.

¶ 20 Third, Intermountain has not established that "equitable relief, such as an injunction, *was* and is wholly inadequate to protect [its] rights or redress [its] injuries." *Spackman*, 2000 UT 87 at ¶ 25, 16 P.3d 533 (emphasis added). Intermountain could have sought an injunction to enjoin UDOT's purported discriminatory actions. While the completion of the I–15 reconstruction makes equitable relief pointless today, Intermountain has not established that an injunction *was* wholly inadequate to protect its rights or redress its injuries at the time of the I–15 reconstruction. *See id.* at ¶ 24.

¶ 21 Accordingly, we hold that Intermountain may not proceed with a private suit for damages for UDOT's alleged violation of article I, section 24 of the Utah Constitution.

## CONCLUSION

¶ 22 We hold that the trial court did not err by dismissing Intermountain's complaint. Intermountain has failed to state a claim for inverse condemnation and it cannot demonstrate that a private suit for damages is available for UDOT's alleged violation of article I, section 24 of the Utah Constitution. Accordingly, we affirm.

¶ 23 WE CONCUR: JAMES Z. DAVIS and PAMELA T. GREENWOOD, Judges.