2005 UT App 519

**UTAH DEPARTMENT OF TRANSPORTATION, Plaintiff and Appellee,**

v.

**James IVERS, Katherine G. Havas, P & F Food Services, and Zions Credit Corporation, Defendants and Appellants.**

No. 20050246–CA.

Court of Appeals of Utah.

Dec. 8, 2005.

John W. Holt and Donald J. Winder, Winder & Haslam, Salt Lake City, for Appellants.

Mark L. Shurtleff, Attorney General, Steven C. Ward and Randy S. Hunter, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges DAVIS, GREENWOOD, and THORNE.

## OPINION

GREENWOOD, Judge:

¶ 1 This case involves a taking of private property by Plaintiff Utah Department of Transportation (UDOT) to construct a frontage road adjacent to U.S. Highway 89 (Highway 89) near Farmington, Utah. Defendants James Ivers, Katherine G. Havas, P & F Food Services, and Zions Credit Corp. (collectively, Arby's) appeal the trial court's ruling denying Arby's motion for partial summary judgment and granting UDOT's motion in limine precluding Arby's from presenting evidence of severance damages to a jury. In particular, Arby's argues that, as a result of UDOT's partial condemnation of its property, it is entitled to severance damages representing the diminished value of its commercial property resulting from (1) loss of reasonable access to its remaining property and (2) obstruction of view and visibility. We affirm.

## BACKGROUND

¶ 2 Arby's commercial lot, which is used to operate an Arby's restaurant, is located on the northwest corner of what was the intersection of Shepard Lane and Highway 89, near Farmington, Utah. The total area of Arby's lot is 0.416 acre.

¶ 3 UDOT sought to condemn a 0.048–acre portion of Arby's lot in connection with its construction project to widen Highway 89. Pursuant to the project, the intersection of Shepard Lane and Highway 89 was to be eliminated and Highway 89 was to be elevated to create an underpass allowing traffic to

travel east-west on Shepard Lane underneath the elevated highway.[1] The condemned portion of Arby's property was to be used to construct a one-way frontage road parallel to the newly elevated and widened Highway 89 and to connect with on-ramps and off-ramps to Highway 89.

¶4 UDOT brought suit to condemn the 0.048-acre parcel of Arby's property needed for the project. Thereafter, the parties entered into a stipulated agreement, in which Arby's agreed to grant UDOT immediate occupancy of the subject real property and UDOT agreed to pay Arby's $48,250 for the condemned property. UDOT proceeded with the construction project.

¶5 As a result of the project, direct access to Shepard Lane from Highway 89 was modified. However, access to Arby's from Shepard Lane remains unchanged. Arby's lot can also be accessed from the frontage road, which itself connects to Highway 89 one-half mile north and one-half mile south of Arby's property.[2] Additionally, the elevation of Highway 89 has obstructed the eastern view from Arby's property and the visibility of Arby's property by those traveling on Highway 89.

¶6 Arby's sought severance damages, claiming that the condemnation diminished the market value of the remaining, noncondemned portion of its property. Subsequently, UDOT filed a motion in limine and Arby's filed a motion for partial summary judgment regarding whether Arby's was entitled to severance damages for (1) loss of reasonable access to and from its property and (2) loss of view from and visibility of its property.[3]

¶7 The trial court ruled in favor of UDOT and against Arby's, concluding that under Utah Code section 78-34-10(2), see Utah Code Ann. § 78-34-10(2) (2002 & Supp.2005), and Utah case law, Arby's was not entitled to severance damages for diminished access or loss of view and visibility. The trial court reasoned that Arby's was not entitled to damages for loss of access because the damage Arby's will suffer is "a result of loss of the public's access to Arby's from Highway 89 and does not flow from either the taking of 0.048 acres of [Arby's] property or from the nature of the construction on that part of the property," and because reasonable access to Arby's still exists. Regarding loss of view and visibility,[4] the trial court reasoned that while Arby's has a compensable property interest in its easement of view, because the loss of view here arose from construction on property not taken from Arby's, Arby's is "precluded from introducing evidence of a decline in the market value of their property caused by loss of visibility." Arby's appeals.

ISSUES AND STANDARD OF REVIEW

■ ¶8 Arby's claims that it is entitled to severance damages based upon the condemnation of a portion of its commercial property, which has resulted in the (1) loss of reasonable access to and from its remaining property and (2) loss of view from and visibility of its remaining property.

¶9 This case comes to this court following the trial court's denial of Arby's motion for partial summary judgment and grant of UDOT's motion in limine on the same issues. Arby's does not challenge the trial court's factual findings in this ruling, but only its legal conclusion that Arby's was not entitled to severance damages. Accordingly, the is-

1. The purpose of eliminating the Highway 89/Shepard Lane intersection was to decrease the number of accidents in the area resulting from the nature of the intersection.

2. Access to Arby's property has always been via Shepard Lane rather than Highway 89. However, before the construction project, there was an intersection between Highway 89 and Shepard Lane near Arby's property. Now, persons wishing to access Arby's property from Highway 89 must do so via the frontage road, either one-half mile to the north or one-half mile to the south of Arby's property.

3. Arby's also sought damages for inability to comply with local zoning ordinances, which was a result of the elevation and widening of Highway 89. The trial court ruled in favor of Arby's on this issue. Subsequently, the parties mediated this issue, with UDOT agreeing to pay Arby's $56,250, in addition to the $48,250 UDOT already paid for the condemnation. Accordingly, this is not an issue on appeal.

4. The trial court treated Arby's claims for loss of view and loss of visibility together as a single claim, as do we.

sues present questions ·of law, which we review for correctness. *See Woodbury Amsource, Inc. v. Salt Lake County*, 2003 UT 28,¶ 4, 73 P.3d 362 ("We review the district court's summary judgment ruling for correctness, granting no deference to its legal conclusions."); *see also Ford v. American Express Fin. Advisors, Inc.*, 2004 UT 70,¶ 33, 98 P.3d 15 (reviewing the trial court's legal conclusions in a motion in limine for correctness).

## ANALYSIS

### I.  Loss of Reasonable Access

■ ¶ 10 Arby's first argues it is entitled to severance damages for the loss of access to its property caused by UDOT's severance of a 0.048–acre portion of its property for a construction project involving Highway 89. We disagree.

■ ¶ 11 "Severance damages are those caused by the taking of a portion of the parcel of property where the taking or the construction of the improvement *on that part* causes injury to that portion of the parcel not taken." *Utah Dep't of Transp. v. D'Ambrosio*, 743 P.2d 1220, 1222 (Utah 1987). This rule is codified in Utah Code section 78–34–10(2), which provides, in relevant part:

> The court, jury or referee must hear such legal evidence as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:
>
> . . . .
>
> (2) if the property sought to be condemned constitutes only part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff. . . .

Utah Code Ann. § 78–34–10(2). Arby's claims the loss of access to its property is compensable under this section.

¶ 12 The Utah Supreme Court recently rejected a similar argument, also premised on section 78–34–10(2), in *State v. Harvey Real Estate*, 2002 UT 107, 57 P.3d 1088. In *Harvey*, UDOT closed an intersection at Highway 89 and Old Mountain Road in order to decrease the number of accidents on Highway 89. *See id.* at ¶ 5. UDOT also sought to build a frontage road approximately one-half mile from the closed intersection. *See id.* Accordingly, UDOT brought a condemnation action to acquire approximately 1.36 acres of property from Harvey Real Estate (Harvey) to construct the frontage road. *See id.* at ¶ 6. The frontage road eliminated direct access to the Harvey property from Highway 89. *See id.* at ¶ 5.

¶ 13 During the condemnation action, "UDOT filed a motion in limine seeking to preclude Harvey from presenting expert testimony at trial that the closure of the Old Mountain Road/Highway 89 intersection will substantially decrease the value of the remaining Harvey property." *Id.* at ¶ 7. The trial court granted UDOT's motion, concluding "that evidence of alleged damages from the intersection closure was not admissible because any damages sustained by Harvey were not the result of the loss of land to be used in building the frontage road and thus did not qualify as severance damages." *Id.*

¶ 14 The supreme court affirmed on appeal, observing that "[s]ection 78–34–10 gives a landowner the right to present evidence of damages caused by the construction of the improvement *made on the severed property.*" *Id.* at ¶ 10 (emphasis added). This "accords with the well-established common law principle that severance damages 'may be made for any diminution in the value of [an owner's non-condemned land], as long as those damages were *directly caused by the taking itself* and by the condemnor's use of the land taken.'" *Id.* at ¶ 11 (alteration in original) (quoting 26 Am.Jur.2d *Eminent Domain* § 368 (1996)).

¶ 15 Applying this reasoning, the supreme court determined Harvey was not entitled to severance damages because Harvey failed to show "that any damage sustained by the closure of the intersection has been caused by the severance of its land." *Id.* at ¶ 12. Instead, Harvey sought damages for devaluation of its property as a result of loss of access to Highway 89, attempting "to establish a causal connection between its alleged damages and the taking by arguing that the

closure of ... the intersection was made possible only by the taking of Harvey's property, the inference being that the taking caused the closure." *Id.* However, "UDOT could have chosen to close the intersection independent of the taking." *Id.* As such, "[t]he taking may be somewhat related to the closure, but it did not cause the closure, nor did it cause the damages that Harvey claims as a result of the closure." *Id.*

¶ 16 *Harvey* is dispositive of the present issue. Arby's claim for damages is based on its reduced access to Highway 89, specifically the closing of the Highway 89/Shepard Lane intersection and the elevation of Highway 89. However, no portion of Arby's land was condemned to accomplish these endeavors. Instead, as in *Harvey*, Arby's property was severed to construct a frontage road, *see id.* at ¶ 5, a use for which Arby's has not claimed damages for loss of access. As in *Harvey*, UDOT could have chosen to close the intersection and elevate Highway 89 "independently of the taking." *Id.* at ¶ 12. Accordingly, Arby's has failed to establish the essential causal link between the damages it claims for loss of access, and " 'the taking itself and ... the condemnor's use of the land taken.' " *Id.* at ¶ 11 (emphasis omitted) (citation omitted).

■ ¶ 17 Arby's seeks to avoid this result and establish a causal connection between the taking and the purported damages to its remaining property by arguing that the "only way for the [Highway] 89/Shepard Lane intersection to be eliminated and for [Highway] 89 to be expanded and elevated, was for UDOT to take Arby's property for construction of a one-way [frontage] road." However, the fact that Arby's land was taken as a part of the same construction project that elevated Highway 89 and closed the intersec-

tion is not, in itself, determinative. Rather, as observed in *Harvey*, in which a similar argument was rejected,

> [s]ection 78–34–10 gives a landowner the right to present evidence of damages caused by the construction of the improvement made on the severed property. It does not give the landowner the right to present evidence of damages caused by other facets of the construction project. Were the opposite true, a landowner would be entitled to present evidence unrelated to the taking. For example, where property was taken for a multi-mile-length road construction project, a landowner would be entitled to present evidence of all damages conceivably stemming from the road construction, even those damages attributable to construction occurring miles away. This would defeat the purpose of our eminent domain statutes, which are designed to compensate the landowner only for his loss of property rights.

*State v. Harvey Real Estate*, 2002 UT 107,-¶ 10, 57 P.3d 1088. Indeed, "owners of neighboring properties may be impacted by the closure of the intersection [and elevation of the highway] but they, likewise, would not be entitled to seek compensation." *Id.* at ¶ 12. Thus, while Arby's "taking may be somewhat related" to the construction project, the taking did not "cause the damages [Arby's] claims as a result" of the project.[5] *Id.*

■ ¶ 18 Furthermore, although the right of access is a compensable appurtenant property right, *see Utah State Road Comm'n v. Miya*, 526 P.2d 926, 928–29 (Utah 1974), "the interest protected simply entails the 'right of ingress and egress to and from ... property and the abutting public highway.' " *Harvey*, 2002 UT 107 at ¶ 14, 57 P.3d 1088 (alteration

---

5. In its brief, Arby's also attempts to distinguish its case from *State v. Harvey Real Estate*, 2002 UT 107, 57 P.3d 1088, by arguing that, unlike Harvey's, its property is used for commercial purposes. Although Arby's retreated from this position during oral argument, we note that neither section 78–34–10(2), *see* Utah Code Ann. § 78–34–10(2) (2002 & Supp.2005), nor Utah case law attribute significance to the underlying character of the property. *See State v. Rozzelle*, 101 Utah 464, 120 P.2d 276, 278 (1941) (making no distinction for commercial property in denying sev-

erance damages to the owner of a gasoline station for loss of business); *Bailey Serv. & Supply Corp. v. State*, 533 P.2d 882, 883 (Utah 1975) (denying severance damages to warehouse owner for loss of access caused by a viaduct built on a public right-of-way). Indeed, while the commercial nature of Arby's property might be relevant in calculating the amount of severance damages Arby's would receive if its entitlement were established, it is not relevant to determining whether Arby's is entitled to damages in the first place.

in original) (quoting *Hampton v. State*, 21 Utah 2d 342, 445 P.2d 708, 711 (1968)). "The right does not extend so far as to guarantee a property owner that his property will be accessed through specific intersections or that the roads accessing his property will be easily accessed from other thoroughfares." *Id.* In other words, the right of access is the right of reasonable access. In the present case, the frontage roads provide access, via Shepard Lane, to and from Arby's property to Highway 89, albeit circuitously, both one-half mile to the north and one-half mile to the south of Arby's property. Additionally, Arby's Shepard Lane access remains unchanged. This is reasonable access.

¶ 19 Accordingly, Arby's is not entitled to severance damages for loss of access.

## II. Loss of View and Visibility

■ ¶ 20 Arby's next argues that it is entitled to compensation for the loss of view and visibility. This argument fails as well.

¶ 21 In *Utah State Road Commission v. Miya*, 526 P.2d 926 (Utah 1974), the State condemned 0.66 acre of the defendants' land for highway purposes. *See id.* at 927. The State constructed a viaduct upon this highway that blocked the view from and interfered with the privacy of the defendants' land. *See id.* at 928. Defendants sought and were granted damages for the diminished market value of their lots. *See id.*

■ ¶ 22 The supreme court affirmed on appeal, noting that "the rights of access, light, and air are easements appurtenant to the land of an abutting owner on a street; they constitute property rights forming part of the owner's estate." *Id.* An owner "is entitled to compensation for infringement of his right to light and air by a structure in the highway, even if it is a proper highway use." *Id.* at 929. "An owner of land abutting on a street is also in possession of an easement of view, which constitutes a property right which may not be taken without just compensation." *Id.*

■ ¶ 23 Arby's argues that it is entitled to compensation under these principles because the elevation of Highway 89 deprived Arby's of its view. However, as opposed to *Miya*, there is no causal nexus between the taking of Arby's land and the loss of view. In *Miya*, the viaduct was constructed, in part, on the land taken from the landowners, thereby severing the right to a view from the remaining, noncondemned portion of their land.[6] *See id.* Here, although Arby's land was taken for the purpose of widening Highway 89, no part of it was actually utilized in elevating Highway 89. As with the loss of access, allowing Arby's damages for loss of view would be compensating it for the taking of property rights it does not own. Moreover, "owners of neighboring properties may be impacted . . . but they, likewise, would not be entitled to seek compensation."[7] *State v.*

6. Arby's claims that there is no language in *Utah State Road Commission v. Miya*, 526 P.2d 926 (Utah 1974), requiring the obstruction be built upon property taken before an abutting property owner could seek compensation for loss of view. Admittedly, *Miya* does not explicitly state such a requirement. However, a case that the *Miya* court cites in support of its conclusion states:

"[T]he loss of view occasioned by a proposed public structure to be erected, *in part at least upon a parcel of property taken by condemnation from a unit of property*, so far as constituting a factor to be considered in determining severance damage, is to be measured by the effect the obstruction of view, created by the structure, has upon the market value of the residue of the unit of property."

*Id.* at 929 (emphasis added) (alterations omitted) (quoting *In re Housing Auth. of Seattle*, 68 Wash.2d 485, 413 P.2d 635, 638 (1966)). The *Miya* court's reliance on this statement indicates that the viaduct was built, at least in part, upon a parcel of property taken from the landowners,

making Arby's case distinguishable. Furthermore, the right to a view is an appurtenant right similar to the right of access. *See id.* at 927–28. Hence, requiring the view-obstructing improvement to be constructed, at least partially, upon the land severed from the condemnee comports with the principles recognized in both earlier and later Utah cases. *See, e.g., State v. Rozzelle*, 101 Utah 464, 120 P.2d 276, 278 (1941) ("[A]n abutting property owner may recover for losses sustained such as a result from the shutting off or interfering with his access, light, or air[,] . . . but be the loss what it may it must have a causal connection with the taking of the property or the construction thereon." (internal citation omitted)); *see also State v. Harvey Real Estate*, 2002 UT 107,¶¶ 12,14, 57 P.3d 1088 (same); *Utah Dep't of Transp. v. D'Ambrosio*, 743 P.2d 1220, 1222 (Utah 1987) (same).

7. Arby's also claims that it is entitled to separate severance damages for the loss of visibility of its remaining property, i.e., the loss of Arby's ability

*Harvey Real Estate,* 2002 UT 107, ¶ 12, 57 P.3d 1088.

¶ 24 Therefore, because Arby's loss of view and visibility was not caused by the severance of its property or the construction of an improvement thereon, it is not entitled to severance damages.

## CONCLUSION

¶ 25 Accordingly, the trial court's judgment granting UDOT's motion in limine and denying Arby's partial motion for summary judgment is affirmed. Arby's is not entitled to severance damages. Any loss of access, view, or visibility was not caused by the taking of part of its property or the construction of an improvement on the severed property.

¶ 26 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.

to be seen by potential customers. Essentially, Arby's seeks compensation for business lost due to the construction project. However, we have previously refused "to adopt the view that a business has a protectable property interest in the mere hope of future sales from passing traffic or that the rerouting of traffic constitutes a compensable taking under article I, section 22 of the Utah Constitution." *Intermountain Sports, Inc. v. Utah Dep't of Transp.,* 2004 UT App 405, ¶ 11, 103 P.3d 716, *cert. denied,* 109 P.3d 804 (Utah 2005). Moreover, even if we were to characterize Arby's claim simply as a loss of visibility of its property, without considering Arby's motivation for seeking compensation, Arby's claim would still fail. Although there are no Utah cases addressing this exact issue, "[w]here the loss of visibility results from an improvement of or on land that was not taken from the claimant, such as on an abutting highway or on land taken from another, most courts have found loss of visibility not compensable." Tracy A. Batemen, Annotation, *Eminent Domain: Compensability of Loss of Visibility of Owner's Property,* 7 A.L.R. 5th 113, 2a, 1992 WL 767592 (1992); *see also, e.g., 8,960 Square Feet v. Department of Transp. & Pub. Facilities,* 806 P.2d 843, 848 (Alaska 1991) ("[L]oss of visibility is compensable in an eminent domain proceeding where the diminished visibility results from changes on the property taken from the landowner, but not where it occurs due to changes on the property of another."). We agree with these authorities. Thus, even if loss of visibility is a compensable property right, because the diminished visibility is not caused by an improvement on land taken from Arby's, it, like diminished view and access, is not compensable as severance damages.