2007 UT 19

James IVERS; Katherine G. Havas; and P and F Food Services, Plaintiffs and Petitioners,

v.

UTAH DEPARTMENT OF TRANS-PORTATION, Defendant and Respondent.

No. 20060061.

Supreme Court of Utah.

Feb. 6, 2007.

Donald J. Winder, John W. Holt, Salt Lake City, for petitioners.

Mark L. Shurtleff, Att'y Gen., Brent A. Burnett, Randy S. Hunter, Asst. Att'ys Gen., Salt Lake City, for respondent.

WILKINS, Associate Chief Justice:

¶ 1 The Utah Department of Transportation ("UDOT") condemned a portion of private property for the construction of a frontage road adjacent to U.S. Highway 89 in Farmington, Utah. The construction of the frontage road was part of a larger project to widen and elevate Highway 89. Petitioners James Ivers, Katherine G. Havas, and P & F Food Services (collectively, "Arby's") sought severance damages for loss of view and visibility. The trial court granted UDOT's motion in limine, precluding Arby's from presenting evidence of severance damages to a jury. Arby's appealed, and the court of appeals affirmed. We granted certiorari to

determine whether article I, section 22 of the Utah Constitution permits claims for compensation and whether Utah Code section 78–34–10 permits presentation of evidence of damages arising from an alleged easement for view or visibility, where the damages to the alleged easement are caused by construction beyond the boundaries of the landowner's property. We conclude that since the raised highway was not built on the condemned land, unless the use of the condemned land was essential to the construction of the raised highway, Arby's is not entitled to damages for loss of view or visibility. We therefore remand for the necessary factual determination.

## BACKGROUND

¶ 2 Arby's land is located on the northwest corner of what was the intersection of Shephard Lane and Highway 89 in Farmington, Utah. In order to decrease the number of accidents, UDOT planned to eliminate the intersection by elevating Highway 89 over Shephard Lane. In furtherance of this goal, the State condemned a 0.048–acre portion of Arby's 0.416–acre lot in order to build a one-way frontage road parallel to, and connecting with, the newly widened and elevated highway. UDOT agreed to pay Arby's $48,250 for the condemned property.[1]

¶ 3 The condemned portion of Arby's property is located on the south and east edges of the property, which abut Shephard Lane and Highway 89 respectively. No portion of the raised highway, its footings, or its foundation was constructed on the condemned land; rather, the condemned land was used for the creation of the frontage road and for improvements to Shephard Lane.

¶ 4 Although Arby's property is adjacent to Highway 89, access to the property has historically been available only by means of Shephard Lane, which had intersected directly with the highway. After the project, Shepard Lane no longer connected directly

to Highway 89; rather, the highway is accessed by frontage roads one-half mile north and one-half mile south of Shephard Lane. The elevation of the highway has obstructed both the view to the east from Arby's land and the visibility of Arby's property from the highway.

¶ 5 Arby's sought severance damages, claiming that the condemnation, and the pursuant loss of view and visibility, diminished the market value of their remaining land.[2] UDOT filed a motion in limine. The trial court granted the motion, concluding that Arby's was precluded from introducing evidence of damages because the loss of view and visibility arose from construction on property not actually taken from them.

¶ 6 Arby's appealed the trial court's decision to the court of appeals. The court of appeals affirmed, holding that because the loss of view and visibility was not caused by the severance or by the construction of an improvement on the land severed, Arby's was not entitled to severance damages. We then granted Arby's petition for a writ of certiorari.

## ANALYSIS

■ ¶ 7 On certiorari, we review the decision of the court of appeals and not that of the trial court. *State v. Brake*, 2004 UT 95, ¶ 11, 103 P.3d 699. Because the issue before this court is a question of law related to constitutional and statutory interpretation, we review the court of appeals' ruling for correctness. *Longley v. Leucadia Fin. Corp.*, 2000 UT 69, ¶ 13, 9 P.3d 762. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(a).

¶ 8 Article I, section 22 of the Utah Constitution provides, "Private property shall not be taken or damaged for public use without just compensation." Utah Code section 78–34–10 gives a landowner the right to present certain evidence of damages, including severance damages, to a jury for a determination

---

1. In addition to the $48,250 compensation originally agreed upon, UDOT later agreed to pay Arby's $56,250 in additional compensation for damages caused by Arby's inability to comply with local zoning ordinances due to the condemnation and the highway project.

2. Arby's also sought damages for loss of reasonable access to and from its property. However, we did not grant review of that issue.

of compensation. Section 78–34–10 provides in part the following:

The court, jury or referee must hear such legal evidence as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

. . . .

(2) if the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff

. . . .

Utah Code Ann. § 78–34–10 (2002).

¶ 9 We have held that loss of view is, in certain situations, an appropriate factor for a jury to consider in awarding severance damages. In *Utah State Road Commission v. Miya*, we held that the "rights of access, light, and air are easements appurtenant to the land of an abutting owner on a street," and that those rights "may not be taken away or impaired without just compensation." 526 P.2d 926, 928–29 (Utah 1974). We further concluded that an owner of land abutting a street possesses an "easement of view" that may not be taken without just compensation. *Id.* at 929. On the other hand, we have never decided whether a loss of visibility of property from an abutting road qualifies for severance damages.

¶ 10 The question we are now faced with is when, if ever, an impairment of view or visibility is compensable where the impairment is caused by a structure that is built beyond the borders of the severed land. In answering this question, we will address separately Arby's claims for loss of view from their property and the loss of visibility of their property.

## I.  LOSS OF VISIBILITY

■ ¶ 11 We have not previously addressed whether a landowner has a protectable property interest in the visibility of his land. For a point of reference, we look to other jurisdictions' decisions on the matter. Where government action impairs visibility but there is no physical taking of land, "the virtually unanimous rule provides that there is no freestanding right to be seen, and that the government need not pay compensation for lessened visibility." *Regency Outdoor Adver., Inc. v. City of Los Angeles,* 39 Cal.4th 507, 517–18, 46 Cal.Rptr.3d 742, 139 P.3d 119 (2006). However, when the impairment of visibility is coupled with a partial taking of land, as is the case here, there seems to be little consensus from state to state. While some states recognize an easement of visibility where an obstruction is built on the condemned land,[3] other states have concluded that visibility, by itself, is simply not a compensable property right.[4] On this issue, we can find no generally accepted rule. We next turn to the statutory and case law of our state.

■ ¶ 12 Neither the legislature nor this court has recognized a protected property right in visibility of one's property from the roadway. As a result, the court of appeals concluded that Arby's was not entitled to present evidence of claimed damage to their property caused by a loss of visibility of the property. We agree. In Utah, landowners do not have a protected interest in the visibility of their property from an abutting road, even if part of their land has been taken in the process.

---

3.  *See 8,960 Square Feet v. Dep't of Transp. & Pub. Facilities,* 806 P.2d 843, 848 (Alaska 1991) (holding that "loss of visibility is compensable in an eminent domain proceeding where the diminished visibility results from changes on the property taken from the landowner, but not where it occurs due to changes on the property of another."). The court of appeals noted that even under this standard, Arby's would not have been entitled to compensation because the obstruction was not built on the condemned land.

4.  Tracy A. Batemen, Annotation, *Eminent Domain: Compensability of Loss of Visibility of Owner's Property,* 7 A.L.R.5th 113, § 2[a] (1992) ("Where part of an owner's land is taken for the purpose of a public improvement pursuant to the power of eminent domain, and the improvement of or on the land taken results in a loss of visibility to the owner's remaining property, some courts have found this loss of visibility compensable, . . . while others have found such loss of visibility not compensable." (citations omitted)).

¶ 13 In *Utah State Road Commission v. Miya*, we concluded that the "rights of access, light, and air are easements appurtenant to the land of an abutting owner on a street." 526 P.2d 926, 928 (Utah 1974). We also concluded in *Miya* that "[a] property owner has no property right to a free and unrestricted flow of traffic past his premises, and any impairment or interference with this flow does not entitle the owner to compensation." *Id.* Similarly, a property owner has no recognized property right to free and unrestricted visibility of his property by passing traffic, and an impairment of that visibility does not mandate compensation.

¶ 14 The speculative nature of the damages sought in a claim for loss of visibility further supports this conclusion. As the court of appeals correctly noted, a claim for loss of visibility is essentially a claim for compensation for lost business profits. Article I, section 22 of the Utah Constitution simply does not create a protectable property interest in the mere hope of future sales from passing traffic.[5]

¶ 15 Because property owners have no protectable property interest in visibility, the trial court was correct in granting the motion in limine on this issue, and the court of appeals was correct in affirming.

## II.  LOSS OF VIEW

¶ 16 Unlike visibility, existing Utah law does recognize an easement of view *from* one's property as a protectable property right. Utah Code Ann. § 72–6–117(5) (2001); *Utah State Rd. Comm'n v. Miya*, 526 P.2d 926, 928–29 (Utah 1974). Severance damages are clearly awardable when the state condemns a portion of land and builds a structure directly on that condemned land, impairing the view from, and thereby causing damage to, the non-condemned portion of land. In *Utah Department of Transportation v. D'Ambrosio*, we held that severance damages include "those [damages] caused by the taking of a portion of the parcel of property where the taking or the construction of the improvement *on that part* causes injury

to that portion of the parcel not taken." 743 P.2d 1220, 1222 (Utah 1987) (emphasis in original). Similarly, in *Utah Department of Transportation v. Harvey Real Estate*, we stated, "Section 78–34–10 gives a landowner the right to present evidence of damages caused by the construction of the improvement made on the severed property." 2002 UT 107, ¶ 10, 57 P.3d 1088.

¶ 17 We have not previously addressed a case, like this, in which the land was condemned as part of a single project to build a structure that would impair the view from the remaining property, but in which that structure was not built on the severed land. In this case, the raised highway, which Arby's claims damages its view, was not built in any part on the condemned portion of Arby's land. Rather, the condemned land was used for the construction of a small portion of the frontage road. The frontage road itself causes no damage to the view from Arby's remaining land. However, according to the trial court's findings, the land was condemned as part of UDOT's plan to raise the highway and was therefore condemned as part of a single project.

¶ 18 Whether severance damages are awardable hinges on whether the severance of the condemned property, and the use of *that* property, *caused* damage to the remaining property. Utah Code section 78–34–10(2) describes severance damages as those damages "which will accrue to the portion [of property] not sought to be condemned *by reason of its severance* from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff" (emphasis added). This section has no express requirement that the view-impairing structure be built directly on the condemned land. Rather, it only requires that the severance damages be caused by the condemnation of, and use of, the property.

¶ 19 The court of appeals recognized this important distinction when it concluded that Arby's was not entitled to severance dam-

---

**5.** *See Strawberry Elec. Serv. Dist. v. Spanish Fork City*, 918 P.2d 870, 878 (Utah 1996) ("[T]o create a protectable property interest, [one] must establish rights more substantial than a unilateral expectation of continued privileges.").

ages because their "loss of view and visibility was not *caused* by the severance of its property *or* the construction of an improvement thereon." *Utah Dep't of Transp. v. Ivers,* 2005 UT App 519, ¶ 24, 128 P.3d 74 (emphasis added).

¶ 20 In *Miya, Harvey Real Estate,* and *D'Ambrosio,* we concluded that when the state condemns a portion of land and builds a view-impairing structure directly on that land, the damage to the remaining property is recoverable. This is because when the condemned land is used for the construction of the view-impairing structure, the damage to the remaining property is clearly caused by the severance. However, these cases should not be read, as the State does, to hold that the only situation in which a partial condemnation can cause awardable severance damages is when the view-impairing structure is built directly on the severed land.

¶ 21 When land is condemned as part of a single project—even if the view-impairing structure itself is built on property other than that which was condemned—if the use of the condemned property is essential to the completion of the project as a whole, the property owner is entitled to severance damages. Logically, if the project could not be built without taking the condemned land, the impairment of view caused by the completion of the project could and would not have arisen "but for" the condemnation. This is the very essence of cause. However, if the project could have been completed without taking the severed land, the property owner is not entitled to damage to his view caused by construction that takes place entirely beyond the borders of his land. Stated another way, the condemned land is "essential" to the project only if its use is such a critical part of the project that without the taking, the project could not have been completed.

¶ 22 Arby's asks us to adopt the standard applied by some other jurisdictions that "where the use of the land taken constitutes an *integral and inseparable* part of a single use ... the effect of the whole improvement is properly to be considered" in awarding severance damages. *Andrews v. Cox,* 129 Conn. 475, 29 A.2d 587, 590 (1942) (emphasis added). We decline to adopt the "integral and inseparable" language as our standard, choosing instead to expressly limit severance damages to situations where the condemnation and use of the condemned land was essential to the project. We believe this strikes the correct balance between the property owner's rights under constitutional and statutory law and the state's interest in its ability to improve the highway system without being exposed to limitless liability. This approach also best complies with the express language of section 78–34–10.

¶ 23 In this case, a very narrow piece of land was taken to create a portion of a frontage road. That condemned land appears to have had a turning lane, curb and gutters, landscaping, and perhaps a portion of the second of two lanes of the one-way frontage road built on it. Under our but-for standard, we cannot say that Arby's land was, or was not, essential to the project. This is a factual question as yet left unanswered by the record before us. Consequently, remand to the trial court for that factual determination is necessary.

¶ 24 If the use of Arby's condemned land was not "essential" to the project, they are not entitled to severance damages for loss of view from the property under article I, section 22 of the Utah Constitution or Utah Code section 78–34–10. If it was, appropriate damages may be awarded.

**CONCLUSION**

¶ 25 The court of appeals correctly concluded that Arby's is not entitled to severance damages for loss of visibility. A property owner does not have a protectable interest in the visibility of his property from an abutting highway. A property owner does, however, have a protectable easement in the view from his property.

¶ 26 With respect to lost view, severance damages are appropriate under Utah Code section 78–34–10 where a portion of property is condemned by the state and the condemnation of that land *causes* damage to the noncondemned portion of land. Damage to the noncondemned portion of land is "caused" by the severance in two situations:

(1) when the view-impairing structure is built on the condemned land, or (2) when the view-impairing structure is built on land other than the condemned land, but the condemned land is used as part of a single project and that use is *essential* to completion of the project. The raised highway, which blocks the view from Arby's land, was not built on Arby's land. However, whether the land taken from Arby's was essential to the highway project is a factual matter not yet resolved. Affirmed in part and remanded for proceedings consistent with this opinion.

¶ 27 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.