2007 UT 75

**WINTERGREEN GROUP, LC, a Utah limited liability company, Plaintiff and Appellant,**

v.

**UTAH DEPARTMENT OF TRANSPORTATION, Defendant and Appellee.**

**No. 20060338.**

Supreme Court of Utah.

Sept. 18, 2007.

Rehearing Denied Oct. 31, 2007.

---

**14.** *Id.* at 103.

Nick J. Colessides, John Martinez, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Brent A. Burnett, Randy S. Hunter, Asst. Att'ys Gen., Salt Lake City, for defendant.

NEHRING, Justice:

## INTRODUCTION

¶ 1 This appeal is the offspring of several condemnation lawsuits that merged into one dispute between the Utah Department of Transportation (UDOT) and the Wintergreen Group, LC. After UDOT brought three separate condemnation actions on different parts of Wintergreen's land, Wintergreen brought a fourth inverse condemnation action, alleging state and federal takings claims. Wintergreen contended that by filing three separate condemnation actions, UDOT improperly fragmented Wintergreen's land holdings and left Wintergreen at risk of receiving less compensation for the serial takings than it would have received had UDOT brought a single condemnation action.

¶ 2 The district court saw merit in Wintergreen's concerns and consolidated the three separate condemnation actions into one. But the district court also dismissed Wintergreen's inverse condemnation suit. It reasoned that the consolidated condemnation suit would provide all the relief guaranteed by the state and federal constitutions. We find that the district court's dismissal of Wintergreen's inverse condemnation action based on preemption reasoning was in error. We therefore vacate the dismissal and remand for further proceedings.

## BACKGROUND

¶ 3 The Wintergreen Group is a Utah-based company that owns several parcels of land in the city of Tooele, Utah. Wintergreen's property is located on both the east and west sides of State Road 36 (SR–36). Together, the parcels total approximately 121 acres. Wintergreen intended to use these separate parcels to develop the North Town Shopping Center, which it envisioned as an integrated economic unit. Sometime prior to 2004, UDOT began a project to widen SR–36 in Tooele and to conduct ancillary construction and improvements on and around Wintergreen's land.

¶ 4 During March and April 2004, UDOT filed three actions to acquire by condemnation small portions of land from several of the parcels in Wintergreen's collective land holdings. The district court granted UDOT an Order of Immediate Occupancy in each case, and work commenced. These three condemnation actions reduced the plaintiff's land holdings by just over four and one-half acres and burdened the east side fourteen-acre parcel with temporary and permanent easements.

¶ 5 Approximately one year later, Wintergreen filed an inverse condemnation action against UDOT, alleging six causes of action. The first three causes of action were brought under 42 U.S.C. § 1983 for alleged violations of the Takings Clause of the Fifth Amendment to the United States Constitution. The final three causes of action alleged violations of the takings provision of the Utah Constitution.

¶ 6 UDOT responded to the lawsuit with a motion to dismiss. It argued that the inverse condemnation action was a mere duplication of its direct condemnation suits. UDOT also argued that in addition to providing a functionally identical forum to obtain compensation, the direct condemnation actions provided administrative remedies that Wintergreen was required to exhaust before commencing its inverse condemnation suit. Finally, UDOT challenged the § 1983 actions on the ground that the State was not a person that can be sued under § 1983.

¶ 7 The district court granted UDOT's motion to dismiss. The district court found that the state and federal inverse condemnation actions were inappropriate in this case because the Utah statutory condemnation scheme provided all the remedies that would be available in the inverse condemnation action. The court explained that "[t]he proper procedural action to force the government to pay just compensation for damages to the entire property and not just the three individual parcels is to consolidate the three condemnation actions," which the court did on its own motion. The case now comes before us on direct appeal.

## STANDARD OF REVIEW

¶ 8 We review a district court's decision to dismiss a cause of action under Utah

Rule of Civil Procedure 12(b)(6) for correctness. *E.g., Oakwood Vill. LLC v. Albertsons, Inc.,* 2004 UT 101, ¶ 9, 104 P.3d 1226. "[W]e accept the factual allegations in the complaint as true and interpret those facts and all inferences drawn from them in the light most favorable to the plaintiff as the nonmoving party." *Id.*

## DISCUSSION

¶ 9 The district court erred in granting UDOT's motion to dismiss because the dismissal was premature. The central premise of the district court's ruling was that UDOT's consolidated direct condemnation action functionally absorbed and preempted the claims advanced by Wintergreen in its inverse condemnation action. Wintergreen disputes this, alleging that its state and federal constitutional claims offer different and more comprehensive remedies than those available under Utah's statutory scheme for direct condemnation. We agree with Wintergreen that in the setting of a motion to dismiss, Wintergreen should be permitted to develop its case to show, if it can, the independent viability of its constitutional claims.

¶ 10 Under federal law, the right of a property owner to pursue a takings or inverse condemnation claim does not generally ripen until the landowner has actually been denied just compensation. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194–95, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). If the State has "an adequate process for obtaining compensation, and if resort to that process '[yields] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Id.* (alteration in original) (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1013, 1018, 104 S.Ct. 2862, 81 L.Ed.2d 815 n. 21 (1984)). Consequently, a property owner's constitutional just compensation claim will not ripen "until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. 3108 (citing *Ruckelshaus,* 467 U.S. at 1013, 1018 n. 21, 104 S.Ct. 2862). Thus, where a direct condemnation action has been filed, an inverse condemnation claim will not be ripe until the direct condemnation action has ended because, as long as

the direct condemnation action is active, there is a very real possibility that the landowner will receive just compensation from the government. We find the ripeness analysis of *Williamson County* persuasive.

¶ 11 *Williamson County,* however, does not foreclose a property owner from challenging as defective either the adequacy of the condemnation process or the compensation that the process permits. Presumably, such challenges could be made through a counterclaim in a direct condemnation action or through an independent lawsuit. In fact, the *Williamson County* court implicitly acknowledged that state codifications of the express constitutional right to just compensation may fall short of affording property owners their full complement of constitutional protections. *Id.* at 196–97, 105 S.Ct. 3108 ("Respondent has not shown that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature."). Accordingly, if the constitutional claims of a landowner suggest that the relevant direct condemnation procedure is "unavailable or inadequate" or that the remedies it offers are incomplete, the claims may sidestep ripeness challenges. *Id.* In our view, this is what Wintergreen's pleadings have accomplished here.

¶ 12 Wintergreen sufficiently alleged six claims for inverse condemnation. In the face of those sufficiently pleaded claims, the district court erred when it dismissed the claims based solely on the fact that UDOT had already filed direct condemnation actions, which had been consolidated to more accurately account for severance damages. *See Ivers v. UDOT,* 2007 UT 19, ¶ 8, 154 P.3d 802 (defining severance damages as damages caused when the taking of a portion of a larger parcel of property results in injury to the remaining uncondemned property).

¶ 13 The time will doubtless come when Wintergreen will be put to the test of articulating fully how Utah's statutory condemnation scheme is less than fully congruent with federal and state constitutional guarantees of just compensation. That time was not, how-

ever, at the stage of Wintergreen's initial pleadings.

¶ 14 We are further persuaded that the district court's dismissal of Wintergreen's constitutional counterclaim was in error because the underlying premise of that decision—that Utah's direct condemnation statute functionally preempted Wintergreen's constitutional claim—is suspect. A constitutional cause of action rooted in the organic law of our state is presumptively superior to and must displace any statutory iteration that either conflicts with it or gives it less than full effect. Owing to its different lineage, a constitutional cause of action can never be preempted by statute, regardless of how fully the statute honors the contours of the constitutional claim. Thus, even if Utah's direct condemnation statute provides the full complement of procedural and substantive rights afforded a property owner by the constitution, that statute cannot be said to have preempted the constitutional claim. Rather, any codification of a constitutional cause of action labors in the service of a constitutional cause of action by setting out the process by which those entitled to constitutional relief may acquire it.

¶ 15 We understand that some support exists for the idea that a sufficiently comprehensive statute, which provides an enforcement mechanism for an underlying constitutional right, can preempt a parallel § 1983 action based on the underlying constitutional right itself. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). But preemption is a conceptually viable notion in this setting because the preemption contest is between two statutes—the enforcing statute and § 1983— and not a direct clash between a statute and the constitutional claim. Regardless, it is clear that to extinguish a § 1983 claim which is based on an underlying constitutional right, a defendant must establish that by passing a comprehensive statutory scheme "Congress has expressly withdrawn" the underlying constitutional remedy. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 107, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). "[T]he statutory framework

must be such that 'allowing a plaintiff' to bring a § 1983 action 'would be inconsistent with Congress' carefully tailored scheme.'" *Id.* (quoting *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)). Moreover, the presence of a comprehensive statutory scheme, by itself, "is not necessarily sufficient to demonstrate that Congress intended to foreclose a § 1983 remedy." *Id.* at 106, 110 S.Ct. 444. This difficult burden signals to us that the preemption of claims based on underlying constitutional rights is disfavored. In fact, the Court itself emphasized that it does not "'lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right.'" *Id.* at 107, 110 S.Ct. 444 (quoting *Wright v. Roanoke Redevelopment & Hous. Auth.,* 479 U.S. 418, 423–24, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)). We therefore decline to countenance the district court's decision to dismiss Wintergreen's state and federal constitutional claims under a preemption-based rationale.

¶ 16 Several other issues in dispute in this case, however, were made moot because the district court dismissed Wintergreen's state and federal inverse condemnation claims. For example, before the court dismissed Wintergreen's inverse condemnation action, the court had before it Wintergreen's "Request for 4–Case Consolidation or, in the Alternative, Request for 3–Case Consolidation Plus Deeming 4th Case as Counterclaim." The district court consolidated the three condemnation cases. This ruling was not challenged, but the district court still must decide whether Wintergreen's inverse condemnation action should be treated as a counterclaim in the consolidated action or as an independent action.

¶ 17 Further, as part of its motion to dismiss, UDOT also argued that Wintergreen's federal inverse condemnation action should be dismissed because it was brought under 42 U.S.C. § 1983, and the state's sovereign immunity does not permit a private party to sue a state agency under § 1983. This argument, together with others raised by the parties and brought to the district court for decision, should be considered on remand. We, of course, have the authority to affirm

the district court on alternative grounds. But due in large measure to the embryonic status of this case, we decline to exercise that authority here. Although early in its development, this litigation has stirred up substantial dust that promises to obscure many of the subsidiary issues the parties have placed before us. The proper place for the dust to settle is the district court. We therefore vacate the district court's dismissal of Wintergreen's inverse condemnation action and remand for continued proceedings.

¶ 18 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.